THE CITY OF ROCHESTER, Appellant, *v.* ·BENJAMIN SIMPSON.
Respondent.

The legislature may, in the interest of the public health, vest in the common councils of cities power to pass ordinances requiring either the filling up or draining of excavations upon lands within the corporate limits which are filled with stagnant, foul and unwholesome water.

An ordinance passed pursuant to such authority has the same force as an act passed by the legislature itself.

Plaintiff's charter (§ 276, chap. 14, Laws of 1880) gives to its common council power to pass ordinances for tne draining and regulating of any grounds in the city "which shall be sunken, damp, foul * * * or unwholesome." Said common council passed an ordinance requiring the owner of any stone quarry or premises theretofore used for quarrying stone therefrom to cause the same to be filled up, or the water drained therefrom and the quarries or excavations kept dry. In an action to recover the penalty prescribed for a violation of the ordinance it appeared that defendant owned land in the city formerly used as a quarry upon which was an excavation filled, as plaintiff's evidence tended to show, with stagnant water from which arose offensive odors. Defendant's evidence was to the effect that the water came from a spring and that the pond was useful to defendant as he gathered from it large quantities of ice. *Held* (BRADLEY, BROWN and LANDON, JJ., dissenting), that the common council had power to pass the ordinance; and that the evidence justified a verdict against defendant.

*City of Rochester* v. *Simpson* (57 Hun, 36), reversed.

(Argued June 8, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department entered upon an order made the first Tuesday of June, 1890, which reversed a judgment of the County Court of Monroe county, entered upon an order which affirmed a judgment of the Municipal Court of the city of Rochester in favor of the plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. D. Kiehel* for appellant.

*R. E. White* for respondent.

PARKER, J.   This action was brought to recover a penalty of fifty dollars for the alleged violation of an ordinance which it is claimed enjoined upon the defendant the duty of either filling with earth certain premises owned by him from which stone was formerly quarried, or draining therefrom the water with which it was nearly filled.

With respect to its condition one witness testified : " In the summer months, during July and August, I have smelled very offensive odors, such as usually arise from stagnant waters, and have noticed the green scum on the top of the water; it is so every summer ; I have seen a dead dog in there at different times, or dead dogs in there at different times ; I have observed the odor as I have been passing, but not so far away as my house ; but when passing so much odor as to cause me to put my hand to my mouth."

Another witness who had known the place for thirty years, said : " In the spring of the year, as soon as the ice is off and it becomes warm, it is full of toads and bull-frogs, and a nasty greenish substance floating on top.   Then in the bottom of it it grows up with eel grass, and in the summer months, when it is very offensive the odors arising from it ·  *   *   *.   I have seen dead animals in there at different times, and dead fish floating in the water."

A witness who had lived within two or three hundred feet of the pond, testified : " This odor I have observed is a strong, sickening odor ; I passed by on the east side of the pond, but in warm weather have gone around on the west side on account of the odor."

The witness Slattery said : " I have noticed a green scum on the pond and eel grass growing from the bottom ; have the pleasure of hearing the bull-frogs nights   *   *   * ; the water in that pond I should think was stagnant ; during the summer months it lowers in quantity ; I have noticed that at times it is higher than at others ; it is higher after rains."

A witness who had known the premises twenty years and lived within one hundred and twenty feet of them, testified : " I have often observed odors from it ; it was a strong, offen-

sive odor; I can smell it all the time where I live when the wind is in the south; I could smell it where I lived; I have observed dead bodies there; I have seen dead bodies in there upon more than one occasion; I saw a dead baby pulled out of there; I have seen dead dogs and dead cats there a couple of times, that is all; the edges of the pond has a green scum on and grass grows all around them, as far as I could see; if you don't call that stagnant water I do not know what you would call it; I have only seen dead fish at the edges."

Evidence was adduced on the part of the defense tending to show that the water was not stagnant; that it came largely from a spring in one corner of the quarry, and that the pond was useful to the defendant, as he gathered large quantities of ice from it in the winter. But in other respects the testimony quoted was not disputed. Indeed, some of the defendant's witnesses acknowledged the existence of the odors described by plaintiff's witnesses, and the defendant conceded the presence of the green scum, which he attributed to the frogs.

There must be invoked in support of the judgment originally rendered, if need requires it, a view of the evidence most favorable to the plaintiff, for the judgment has not been reversed on the facts. The County Court affirmed the judgment and the reversal by the General Term was for alleged errors of law.

As there are no exceptions to the admission or rejection of testimony, which justify a reversal of the judgment, the sole inquiry is, does the evidence support the judgment reached by the trial court.

That the legislature, in the interest of the public health, may vest in the common council of cities power to pass ordinances requiring either the filling up or draining of such ponds as the one in question must here be deemed to have been, does not admit of debate, and it would be a work of supererogation to attempt a review of the authorities in view of the careful and exhaustive consideration which they have received by this court in *Cronin* v *People* (82 N. Y. 318) and *Village of Carthage* v. *Frederick* (122 id. 268).

This leads us to examine the plaintiff's charter with the view of ascertaining whether the powers conferred by it are broad enough to authorize the passage of ordinances requiring either the filling up or draining of ponds like the one in question.

It reads: "The common council shall have power to pass and enact such by-laws and ordinances as they shall from time to time deem necessary and proper for the filling up, draining, cleansing, cleaning and regulating any grounds, yards, slips or cellars within the said city, that shall be sunken, damp, foul, encumbered with filth and rubbish or unwholesome."

These premises are certainly within the class which the legislature declared the common council might provide by ordinance for either filling up or draining, for, as appears by the evidence we have quoted, they are sunken, damp, foul and unwholesome.

The settled law is that a municipal corporation possesses not only the powers specifically conferred upon it by its charter, but also such as are necessarily incident to, or may fairly be implied from, those powers. But resort to implication is not required here, for the charter confers upon the common council, in terms, the authority to further legislate so as to provide for the filling up or draining of premises in the situation of defendant. An ordinance, passed pursuant to such authority, has the same force within the corporate limits as an act passed by the legislature itself. ( *Village of Gloversville* v. *Howell,* 70 N. Y. 287; *City of Brooklyn* v. *Breslin,* 57 id. 591–596.)

So, having express authority to provide by ordinance for the filling up or draining of such premises, if the common council did in fact do it, and in so doing did not transcend the powers conferred, their action is legal and the ordinance enforceable.

The ordinance reads as follows: "Every owner, occupant or lessee of any stone quarry, or premises heretofore used for quarrying stone therefrom, within the city of Rochester, shall cause the same to be filled with earth even with the surface of the ground before any excavation was made, or shall cause the water therein to be drained therefrom, and said quarries or excavations kept dry, and the water prevented from accumu-

lating or standing therein, under a penalty of fifty dollars for each offense, to be sued for and recovered from the owner, occupant or lessee thereof, severally and respectively."

As we have already observed, the specific authority given the common council for further legislation, by way of ordinance, embraces premises in the situation of those in question. The ordinance quoted refers to premises of a certain class or kind to which defendant's belong, and it provides for their filling with earth, or that they be drained and water prevented from accumulating.

The ordinance is, therefore, within, and in accordance with, the terms of plaintiff's charter, and the courts have no authority to refuse enforcement of it.

The judgment should be reversed and the judgment of the County Court affirmed, with costs.

All concur, except BRADLEY, BROWN and LANDON, JJ., dissenting.

Judgment reversed.