Submited on briefs without argument April 24, decided May 20, 1913.

# PALMBERG *v.* KINNEY.*

## (132 Pac. 538.)

**Municipal Corporations — Initiative and Referendum — Ordinance—
    Construction—"Immediately."**

1.  A city ordinance providing for initiative and referendum peti-
tions declared that when a petition is filed the police judge must com-
pare the signatures with the handwriting of the electors on the regis-
tration books and determine whether the petitioners are entitled to
have the proposed measure submitted, and provided that "imme-
diately" on the filing of any petition signed by the required number
of voters the auditor and police judge should cause a notice thereof
to be given by publication in a daily newspaper. An initiative peti-
tion was filed October 31st, and the publication of the notice was not
commenced until November 5th. A Sunday intervened. *Held*, that
the notice was published "immediately," for the word must be so con-
strued as to give effect to each provision of the ordinance.

**Municipal Corporations—Initiative Petitions—Notice—Publication—
    Sufficiency.**

2.  The purpose of a provision in an ordinance providing for initia-
tive and referendum that the notice of the filing of an initiative peti-
tion shall be given by publication, together with a brief statement of
the tenor and effect of the petition, is to furnish information of the
measure to be submitted, and the publication of the petition in full
is a sufficient compliance with the ordinance.

**Municipal Corporations—Initiative Petitions—Notice—Publication—
    Time of Publication.**

3.  Where the notice of the filing of an initiative petition was pub-
lished from November 5th to November 15th, inclusive, in a news-
paper published daily, except on Monday, and on Monday, November
11th, an extra edition was printed containing the notice, which issue
was distributed to the subscribers, there was a compliance with the
ordinance requiring the publication of the notice in a newspaper for
eight successive days.

**Municipal Corporations—Public Improvements—Assessment—Nature
    of Improvement.**

4.  Where a large part of the business section of a city was built
over mud flats, so that the buildings and streets rested on piling
driven into the mud·flats, and great quantities of filth and sewage
constantly accumulated, tainting the atmosphere with loathsome odors,
causing an unsanitary condition, the city could construct bulkheads at
the cost of all the property of the city, and fill in tide lands at the cost

---

*On the question of initiative and referendum, see notes in 11
L. R. A. (N. S.) 1092, and 33 L. R. A. (N. S.) 969.—REPORTER.

of the property benefited, each owner being equally responsible for the unsanitary condition.

[As to the validity of municipal laws and regulations in regard to health, see note in 47 Am. St. Rep. 541.]

[As to the purposes for which a municipality may levy assessments and taxes, see note in 16 Am. St. Rep. 365.]

**Municipal Corporations—Nuisance—Ordinance.**

5. The declaration by a municipal legislative body that a particular use of land creates a nuisance is not conclusive, but the question is subject to judicial inquiry when properly brought before the courts.

**Municipal Corporations—Nuisance—Ordinance.**

6. The adoption by the voters of a city, through the initiative power, of an amendment to the city charter providing for the reclaiming of tide lands at the cost of the property benefited thereby is a declaration of the law-making body of the municipality that the condition of the tide flats constitutes a nuisance, and when sustained by evidence is valid.

**Constitutional Law—Police Power—Reclamation of Property.**

7. All property is held by the owner subject to the reasonable exercise of the police power exercised by the state or by a municipal corporation so to regulate the use of property as not to impair the public health.

[As to police power and the fourteenth amendment, see note in 25 Am. St. Rep. 882, 888.]

**Municipal Corporations—Police Power—Reclamation Districts.**

8. It is within the police power of the state to authorize by statute a municipal corporation to fill lots within its limits so as to prevent stagnant water or other nuisance thereon, and to provide for the expense of the improvement against the lots so filled.

**Constitutional Law—Municipal Corporations—Local Improvements— Reclamation of Lowlands—Assessments.**

9. A provision in a city charter for the reclamation of tide lands at the cost of the property benefited is not in conflict with the fourteenth amendment to the federal Constitution, where there is ample provision for the giving of notice before the amount of assessment against any property becomes fixed.

From Clatsop: JAMES U. CAMPBELL, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by Charles G. Palmberg, a resident property holder of the city of Astoria, against Alfred Kinney, W. C. Logan, W. E. Schimpff, W. P. O'Brien, Norris Staples, Martin Franciscovich, E. Hauke, An-

drew Birch, and Jens H. Hansen, *bona fide* resident taxpayers of that city, comprising the sanitary and reclamation commission of the city of Astoria, hereinafter called the commission, to enjoin the construction of bulkheads or retaining walls, and the filling in of tide lands, and to have an amendment of the municipal charter declared void. The common council of Astoria on October 17, 1906, duly enacted ordinance No. 3315, prescribing the manner of exercising the initiative and referendum powers reserved to the legal voters of any town or city by section 1a of article IV of the organic law of the state. Pursuant to the provisions of that ordinance there was filed with the auditor and police judge of Astoria, hereinafter called the police judge, a proper petition demanding that a proposed amendment to the city charter, by the additions of sections 158 to 187, inclusive, be submitted to the electors for adoption or rejection at the general election to be held December 11, 1912. Notice of the filing of the petition and a copy of the proposed amendment having been published, there were cast at such election 1,304 votes in favor of the measure and 574 against it. Proclamation was thereupon made by the mayor that the amendment would go into effect the first Monday of January, 1913. The defendants Kinney and his associates, named in the charter amendment as the commissioners, met after the altered charter became operative and organized by the election of officers. A resolution was adopted by the commission, designating the boundaries of reclamation and improvement district No. 1, and declaring an intention to fill and reclaim all the tide lands within that tract and to assess the costs thereof upon the property benefited thereby, and also to build a bulkhead or retaining wall on a specified line in the district; the cost of constructing which was to be charged against all the property in the city and to be defrayed by the sale

of municipal bonds. The city engineer, at the direction of the commission, prepared plans, specifications and estimates of the proposed improvement. Thereupon this suit was commenced, the complaint alleging that the plaintiff was the owner of real property within the designated district, and that, if the commission were permitted to make the contemplated betterments, he would be irreparably injured and deprived of his property in violation of certain sections of the Constitution of the United States and of the State of Oregon.

The answer and reply having put in issue the averments of the respective parties, the cause was tried resulting in a decree dismissing the suit, and plaintiff appeals.

AFFIRMED.

Submitted on briefs without argument under the proviso of Rule 18 of the Supreme Court: 56 Or. 622 (117 Pac. xi).

For appellant there was a brief over the name of *Mr. A. W. Norblad.*

For respondents there was a brief over the names of *Messrs. John H. & Albert M. Smith.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is contended that the notice of the filing of the petition was not published "immediately," as required by ordinance No. 3315. Section 4 thereof provides that, when a petition for the initiative or referendum shall be filed, the police judge shall compare the signatures on the application with the signatures in the registration books and blanks on file in his office. Section 5 of that ordinance declares that, when any such petition is filed, the police judge shall decide in the first

instance whether or not the application entitles the subscribers to have the measure referred to the electors. Section 6 of the municipal law referred to, as far as material herein, reads as follows:

"Immediately upon the filing of any such petition * * signed by the number of voters and filed within the time required by the ordinance, the auditor and police judge shall cause notice thereof, * * with a brief statement of its tenor and effect, to be given by publication for eight successive days in one daily newspaper printed and published in the city of Astoria."

The initiative petition was filed October 31, 1912. The police judge was required to examine and compare the signatures on the petition with the handwriting of the electors on the registration books and blanks, and to determine whether or not the petitioners were entitled to have the proposed measure submitted to the voters. In order to comply with these requirements, it was necessary that time should be occupied in ascertaining and determining the facts essential to the jurisdiction of the proceedings. The word "immediately," as used in section 6 of the ordinance, hereinbefore quoted, must be so construed as to give force and effect to each provision of the municipal law. The publication of the notice of the filing of the petition was not commenced until November 5, 1912. Excluding October 31st, the day the petition was left with the police judge, he had November 1st, 2d and 4th (the third day of that month being Sunday) in which to compare the signatures and to determine if the petition was in due form, presented within the prescribed time, and subscribed by the requisite number of electors. It is evident that the time so employed by the police judge in the performance of the services demanded was not unreasonable, and that the notice was published "im-

mediately," within the liberal meaning of that word as used in the ordinance.

2. It is maintained that the notice so published should have contained a brief statement of the tenor and effect of the petition; but, as that application was printed in full, there was a failure to comply with section 6 of ordinance No. 3315, thereby invalidating the proceedings. The purpose of publishing the notice was to furnish information of the measure to be submitted to the electors. Because complete knowledge was given by publication, it is certain that no person was injured thereby.

3. The notice was printed in the "Morning Astorian" from November 5, 1912, to the 15th of that month, both days included. The newspaper referred to was published at Astoria daily, except on the second day of the week. On Monday, November 11, 1912, however, an extra edition was printed, containing a copy of the petition, which issue was distributed to its subscribers in that city. There having been a literal compliance with the requirement of the ordinance, which enactment did not demand that a copy of the petition should be printed in the regular issues of the newspaper, the notice was properly published.

4. It is insisted that the declaration found in section 158 of the amended charter, to wit, "In order to protect the health of the inhabitants of the city of Astoria and to prevent the noisome disease breeding stenches that arise from the tide flats, it is deemed necessary and proper that the tide land, mud flats and overflowed lands within the city be reclaimed," etc., was a subterfuge, and that the evidence shows that no city on the Pacific Coast has a record for health that surpasses Astoria. The evidence shows that a large part of the business section of that city embraces within the reclamation district, as designated by the

65 Or.—15

commission, buildings and streets that rest upon pilings driven into mud flats, upon which soil great quantities of filth and sewage are constantly accumulating. Much of this foul material, however, is carried off by the ebb of the tide, but some of it is washed up against the shore or remains on the mud flats to taint the atmosphere with loathsome odors when the tide is out.

O. B. Estes, a physician, who had practiced his profession at Astoria twenty-seven years, testified that the tide flats referred to brought diseases to the people who lived over them, saying: "Most of the typhoid fever we have here is traceable to them." He remarked, however, that they had less diseases of that kind than in any city in the state. He further stated upon oath that the condition of the tide flats was very filthy, and the stench arising therefrom offensive to persons who were not accustomed to it. The witness also made the following declaration: "If God Almighty didn't wash this town out twice a day, in five years there wouldn't be anybody here."

Dr. Calvin S. White, state health officer, referring to these flats, testified as follows: "Parts of them are not entirely covered by tides and are visible. It is very unsanitary." This witness, having gone beneath the planking on the streets and under the buildings in the reclamation district, testified that in one place he found a broken sewer, one third of the contents of which formed a lake under some of the houses; that there were two or three toilets that emptied into this lake, which filth was not carried away by the flood tide; and that the flats were unhealthy and unsanitary, caused by the sewers dumping their contents thereon.

E. F. Pernot, state bacteriologist, made some examination of the flats in question from the elevated streets, saying: "I saw a great deal of rubbish and debris, and I observed a great many houses had chutes

that emptied slops and dish water and garbage down under the street. I found dead cats and all sorts of rubbish when the tide was out.'' He further stated that he considered the tide flats in the reclamation district very unsanitary, caused by breathing gases arising from the decomposed material.

The, sworn declarations of these witnesses are corroborated in many instances by the testimony of Dr. L. H. Henderson, Dr. W. C. Logan, and the defendant, Dr. Alfred Kinney.

There appears to be no difference in the condition of plaintiff's land within the district and the real property of all the other owners therein. The plaintiff's unreasonable use of his own property, whereby injury to the rights of the public producing annoyance, discomfort and hurt, evidences such a wrong as will be declared a nuisance: 29 Cyc. 1156. No barrier or obstacle has been placed by the city of Astoria, or by any other corporation, firm or person that tends in any manner to impede the outflow of the accumulated filth from the district when the tide ebbs. The plaintiff, therefore, in common with all other owners of land within the reclamation district, is equally responsible for the unsanitary condition described by the medical experts to whose testimony reference has been made.

5. The declaration by a municipal legislative body that a particular use of land creates a nuisance is not necessarily conclusive of the fact, but the question is subject to inquiry by the courts when properly brought before them: Freund, Police Power, § 531. Thus an ordinance asserting that a specific use of real property constituted a nuisance is not binding on the courts, unless such use is in fact injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of other land, or an interruption to an easement: *Grossman* v. *City of Oakland,* 30 Or. 478 (41 Pac.

5, 36 L. R. A. 593, 60 Am. St. Rep. 832); *Ex parte Wygant,* 39 Or. 429 (64 Pac. 867, 54 L. R. A. 636, 87 Am. St. Rep. 673).

6. The declaration to be found in Section 158 of the amended charter, hereinbefore quoted, is tantamount to an assertion by a majority of the legal voters of the city of Astoria, who, under the initiative and referendum power reserved by the Constitution of Oregon, compose a branch of the law-making body of that municipality, that the condition of the tide flats, within the reclamation district, constituted a nuisance, which statement of fact is justified by the testimony and is here ratified. The conclusion thus reached presents for consideration the remaining question whether or not the proposed erection on a line nearly parallel with the Columbia River of a concrete retaining wall and filling in back thereof the streets and alleys with earth to the established grade, and also the filling in the same manner the remainder of the real property to a surface nine feet below the line of such grade, taxing the cost of building the bulkhead upon the entire property of the city and issuing municipal bonds therefor, not exceeding $300,000, and also assessing the real property within the district for the special benefits resulting from the improvement, and giving the owners of land so assessed the option of paying for the betterments in installments, and issuing municipal bonds therefor, not exceeding $500,000, violates any provision of the federal or state Constitution.

7. All property is held by its owner subject to a reasonable exercise of the police power, employed by a state or by its agent, a municipal corporation, so to regulate the use of the property as not to impair the public health. A statute requiring railroad companies to fence their tracks in order to protect livestock when roaming at large thereon, and to insure safety in the

operation of trains, is a valid exercise of the police power, and the enactment does not conflict with the fourteenth amendment of the Constitution of the United States: *Sullivan* v. *O. R. & N. Co.*, 19 Or. 319 (24 Pac. 408). The authority guaranteed by that amendment to employ labor is subject to the limitation of the right of the state, under its police power, to regulate callings that affect the public health: *State* v. *Muller,* 48 Or. 252 (85 Pac. 855, 120 Am. St. Rep. 805, 11 Ann. Cas. 88). To the same effect is the case of *Jones* v. *Union County,* 63 Or. 566 (127 Pac. 781).

A statute of New Jersey, providing for the drainage of any tract of land within that state, instituted and prosecuted in a designated manner, and authorizing the assessment by commissioners, after notice and hearing of the expenses upon all the owners, was not to deprive them of their property without due process of law, nor to deny to them the equal protection of the laws within the meaning of the fourteenth amendment of the Constitution of the United States: *Wurts* v. *Hoagland,* 114 U. S. 606 (29 L. Ed. 229, 5 Sup. Ct. Rep. 1086). A statute of Nebraska authorizing municipal councils to drain, fill, or grade lots or pieces of ground within the corporate limits so as to prevent stagnant water, banks of earth, or other nuisances accumulating or existing thereon, and providing for the assessment of the entire expense of the improvement against the property so drained, filled or graded, was held not to be a violation of the provision of the Constitution relating to special assessments for local improvements, but that such an enactment was a warranted exercise of the police power of the state: *Horbach* v. *City of Omaha,* 54 Neb. 83 (74 N. W. 434).

8. It is within the police power of the state, by statute, to authorize a municipal corporation to fill lots within its limits so as to prevent stagnant water or

other nuisance thereon, and to provide for the expense of the improvement against the lots so filled, such an enactment not being in violation of the Constitution: *Patrick* v. *City of Omaha,* 1 Neb. (Unof.) 250 (95 N. W. 477).

In the interest of public health a legislative assembly may empower the common council of cities to pass ordinances requiring either the filling up or the draining of excavations on lands within the corporate limits, which hollow places are filled with stagnant, foul, and unwholesome water; and an ordinance passed pursuant to such authority has the same force and effect as an act passed by the legislature itself: *City of Rochester* v. *Simpson,* 134 N. Y. 414 (31 N. E. 871). In construing a statute authorizing the common council of a city to order the owners of lands, situated in a certain district, "to raise the grade of their said lands, filling up the same with good materials to such permanent grade as may be deemed necessary by the board of aldermen in order to secure a complete drainage thereof, so as to abate and prevent nuisances, and to preserve the public health of the city," and "if the owner of such lands fails to comply with the order, to fill up the land, all necessary expenses incurred thereby shall constitute a lien upon the lands filled." It was held that such an enactment was constitutional, and that under it the whole expense of filling the land was to be borne by the owner without regard to the question whether the land was benefited by such filling: *Nickerson* v. *Boston,* 131 Mass. 306. Where undrained land will jeopardize the health of a city, a statute requiring the filling of such real property at the expense of the owner was held to be a proper exercise of the police power: *Bowes* v. *City of Aberdeen,* 58 Wash. 535 (109 Pac. 369, 30 L. R. A. (N. S.) 709).

9. From a careful examination of the amended charter, we are satisfied that it does not trench upon any provision of the federal or state Constitution; that ample provision is made for the giving of notice before the amount of the assessment against any real property within the district becomes irrevocably fixed; and that the defendants are authorized to proceed with the improvements and to issue the necessary bonds therefor.

The decree is therefore affirmed.        AFFIRMED.