National Currency Exchange, Inc. #3, a Corporation, Plaintiff-Appellee, v. Herbert J. Perkins, d/b/a Purveyor Distributing Company, Defendant-Appellant.

## Gen. No. 49,421.

First District, First Division.

October 5, 1964.

Dowdle and Moscato, of Chicago (Roy R. Moscato, of counsel), for appellant.

Reinecker & McElhaney, of Chicago (C. E. McElhaney, Jr., of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

This is an action on a check drawn May 14, 1960 and dated May 16, 1960. Prior to the due date of the check, on May 14, the payee, John Stauropoulos, endorsed and cashed the check at plaintiff's currency

exchange. The drawer, defendant Perkins, instructed drawee bank, Commercial National Bank of Chicago, to stop payment on the check on May 16. The plaintiff presented the check to the drawee bank for payment but it was dishonored. Plaintiff secured a default judgment against Stauropoulos, the payee therein, which judgment remains unsatisfied. Consequently, plaintiff brought the instant action against the defendant, the drawer thereof. The trial court found against defendant, and entered judgment on the instrument.

The sole question presented to this court, which is one of first, and perhaps last, impression in this State is whether one who purchases for value and in good faith a postdated check before its maturity or due date is a holder in due course and does not take the check subject to whatever defenses are available as between the original parties.

The facts are uncontroverted. The defendant, Perkins, is engaged primarily in the distribution of amusement machines. On May 14 he was contacted by a customer and restaurant owner, John Stauropoulos, who informed defendant of his intention to open a second restaurant. In return for permitting defendant to install an amusement machine in his proposed restaurant, Stauropoulos asked defendant to lend him $450.

Desiring to obtain this business, defendant issued the check, postdating it for the purpose of investigating Stauropoulos' representations and background. Upon discovering that Stauropoulos was insolvent and about to close his one restaurant, and that he had no intention of opening a second one, defendant, at the opening of business Monday morning, May 16, instructed his bank to stop payment on the check.

On May 14, Stauropoulos and another man entered plaintiff's currency exchange, and presented the

check for cashing. Stauropoulos was known to the cashier, Mrs. Ross, who testified that since the amount of the check was over $250, she first cleared it with her employer, and determined that defendant's company existed. She then cashed the check. Her further testimony was that postdating would not enter into consideration in cashing a check, and that in the instant case she did not notice that the check was in fact postdated. Mrs. Ross also stated that the man accompanying Stauropoulos represented himself as being from defendant's company, and showed credentials and assured her that the check was genuine, though upon cross-examination she could not recall the type or nature of the credentials.

Plaintiff deposited the check in its account at the Exchange National Bank, but it was returned with the notation that payment had been stopped on May 16.

To sustain his position defendant argues that a postdated check is irregular within the meaning of Sec 72 of the Negotiable Instruments Law (c 98, § 72, Ill Rev Stats (1959)). That section in part reads:

> 72. [Who is a holder in due course] § 52. A holder in due course is a holder who has taken the instrument under the following conditions:
> 1. That the instrument is complete and regular upon its face.
>
> . . .

The only authority cited by defendant to support his interpretation of Sec 72 is the case of Wilson v. Mid-West State Bank, 193 Iowa 311, 186 NW 891 (1922). However, in that case actual notice of fraud was clearly proven. The court's dicta that a check postdated by three weeks is irregular, unauthorized and not in due course of business and that it carries notice of defect upon its face, so that a purchaser before maturity is

217

not a holder in due course, was not essential or necessary to support its judgment and is clearly obiter. The Negotiable Instruments Law was not cited and the decision otherwise, is unsupported by other authority and, though interesting to read, is not persuasive.

In 21 ALR 234, the annotation following the case of Wilson v. Mid-West State Bank cited by the defendant, the annotator states:

"From the foregoing review of the cases, it appears to be the uniform opinion that the mere fact that a postdated check is negotiated before the date it bears, does not prevent the transferee from becoming a bona fide holder. Insofar as the decision in the reported case (WILSON v. MID-WEST STATE BANK, ante, 229) holds to the contrary, it is unsupported by prior decisions. It seems evident, however, from the opinion as a whole, that the other facts negativing the bona fide character of the holder were instrumental in causing the court to reach the conclusion against his bona fide character.

"The Negotiable Instruments Law is not clear in the matter. In Section 12 (sec 32 of chap 98, Ill Rev Stats 1959) it is provided: 'The instrument is not invalid for the reason only that it is antedated or postdated, provided this is not done for an illegal or fraudulent purpose. The person to whom an instrument so dated is delivered acquires the title thereto as to the date of delivery.' In the cases decided under the act the check has been held a negotiable instrument prior to the date borne thereby. Albert v. Hoffman (1909), 64 Misc 87, 117 NY Supp 1043; Kuflik v. Vaccaro (1918), 103 Misc 239, 170 NY Supp 13; Triphonoff v. Sweeney (1913), 65 Or 229, 130 Pac 979. And so under the English Bills of Exchange Act. Royal Bank of Tottenham (1894), 2 QB

218

(Eng) 715, 64 LJQBNS 99, 9 Reports, 569, 71 LTNS 168, 43 Week Rep 22; Union Bank v. Tattersall (1920), 15 Alberta LR 350, (1920) 2 West Week Rep 497, 52 DLR 409."

In attempting to find further support for his theory, defendant urges that a postdated check is not payable on demand with the drawee bank, and an action cannot be brought on it until the maturity date arrives. But, arguendo, it does not follow that the check is not negotiable, nor that it is invalid. Indeed, the contrary is true. Section 32 of the Negotiable Instruments Law (c 98, § 32, Ill Rev Stats (1959)) states as follows:

"The instrument is not invalid for the reason only that it is antedated or postdated, providing this is not done for an illegal or fraudulent purpose. The person to whom an instrument so dated is delivered acquires title thereto as of the date of delivery."

In Albert v. Hoffman, 64 Misc 87, 117 NY Supp 1043 (1909), the above section of the Negotiable Instruments Law was read as imparting negotiability as well as validity to a postdated check prior to its due date.

The weight of authority is that the mere fact that a postdated check is negotiated prior to the date it bears, does not prevent the transferee from becoming a holder in due course. Albert v. Hoffman, 64 Misc 87, 117 NY Supp 1043; Kuflik v. Vaccaro, 103 Misc 239, 170 NY Supp 13 (1918); Triphonoff v. Sweeney, 65 Ore 229, 130 P 979 (1913). CJS, Bills and Notes, Sec 26; 21 ALR 234. The decisions also hold that the date on the paper is not notice of defenses, and while the question of regularity has not received serious consideration heretofore, the results of the cases are consistent with the rule that postdated checks are complete and regular. Triphonoff v. Sweeney, 65 Ore

229, 130 P 979; Breckenridge, The Negotiability of Postdated Checks, 38 Yale LJ, 1063 (1929). See also Britton, Holder in Due Course, 49 NWUL Rev 417 (1954).

The question posed by this appeal is not one dealt with by any specific provision of the NIL and the instant decision is, perhaps, best rendered by weighing the policy consideration attendant to the problem presented. Though inapplicable to the instant case because the situation arose prior to the effective date of the Uniform Commercial Code (c 26, et seq. Ill Rev Stats (1963)), § 3–304(4)(a) thereof addresses itself to the question before us. That section reads:

> (4) Knowledge of the following facts does not of itself give the purchaser notice of a defense or claim,
>
> (a) That the instrument is antedated or postdated.

The comments relating to this section in the Smith-Hurd Annotated Statutes state:

> Section 12 of the NIL provided that an instrument was not invalid if antedated or postdated, unless this was done for an illegal or fraudulent purpose. Although no Illinois case is directly in point, it was generally accepted that knowledge of postdating or antedating would not make the holder one not in due course on grounds that instrument was not complete and regular as required by Section 52(1) of the NIL. . . .

██ ██ Based upon the above authorities, though sparse, we do not believe Sec 72 of the Negotiable Instruments Law (c 98, § 72, Ill Rev Stats 1959) should be read so as to regard postdating of a check a material alteration or irregularity of such a nature as to indicate wrongdoing, and thereby charging a

purchaser for value and in good faith, with notice of defenses, or to cast upon him a duty of inquiry where the instrument is taken before the due date. Otherwise, it would destroy the good faith position of a purchaser who knows of the postdating, but who does not have actual knowledge that possibly someone may be able to assert a defense. It is a purchaser who knows at the time of the purchase of an asserted defense, or of facts or circumstances which may create a defense who is precluded from being a holder in due course, and then on the theory of "bad faith." The rule announced here not only favors negotiability but is consistent with sound commercial practice and experience, as evidenced by the relevant provisions quoted above from the recently enacted Uniform Commercial Code, now the law in Illinois. Therefore, the judgment of the lower court finding plaintiff to be a holder in due course and entitled to recover on the instrument is affirmed.

Affirmed.

MURPHY, P. J. and BURMAN, J., concur.