528 P.2d 853

**Jon S. HOW and Rita W. How, husband and wife, Appellants,**

**v.**

**Thomas E. FULKERSON and Jo E. Fulkerson, husband and wife, Appellees.**

**No. 2 CA–CIV 1674.**

Court of Appeals of Arizona,
Division 2.

Dec. 10, 1974.

Rehearing Denied Jan. 15, 1975.

Review Denied Feb. 18, 1975.

Johnson, Hayes & Dowdall, Ltd. by John G. Stompoly, Tucson, for appellants.

Silverstone & Stern by Maurice M. Stern, Nolen L. McLean, Tucson, for appellees.

## OPINION

HOWARD, Judge.

The appeal in this case challenges the court's refusal to order specific performance of a contract for the sale of real estate between appellants and appellees.

While visiting Tucson in August, 1971, appellants sought to purchase a trailer park. A real estate sales agent of Richard H. Huff Realty, Inc., Rose Mariani, showed appellants several such parks, including one owned by appellees. On August 24, 1971, appellants made an offer on appellees' trailer park, known as Desert Sands, depositing a check for $2,000 earnest money with Mariani. The offer was rejected. A second offer was submitted two days later. It, too, was rejected, but appellees made a counter-offer. Under the terms of the counter-offer, the total pur-

chase price was to be $135,000. Appellees added several terms which become important in this appeal. First, after the provision covering the amount of earnest money to be paid, the following phrase was inserted, "two thousand to seller acceptance of this contract." Second, appellees added the following provisions:

"Purchasers reserve the option to buy available trailers (those owned by sellers herein) at wholesale blue book price at close of escrow, if trailers are not purchased at close of escrow then the sales price of subject trailers shall be negotiated between the buyers and sellers. The contract of sale mentioned above shall be due and payable in full not later than 120 months from close of escrow. Sale is contingent upon final inspection of books and property by buyer on the day of acceptance by seller of offer to purchase. Seller agrees to pay buyer rental on spaces occupied by trailers owned by seller at regular rates for comparable size trailers until trailers are removed. It is further understood and agreed that the purchasers shall assume and agree to pay the assessments remaining unpaid on subject property with a principal balance of not more than $3,230.72."

Appellants examined the books and property, signed the agreement and gave Mariani a second check for $2,000 payable to appellees. Having already paid out $2,000 by check, appellants dated the second check to appellees as of September 1, 1971, to allow a transfer of funds to their checking account in San Francisco. Mariani tried to present the contract to appellees, but was unable to do so until August 30, 1971. Upon seeing the post-dated check, appellees declared that the deal was off. Mariani left, contacted a Tucson relative of appellants who gave Mariani a check for $2,000 payable to appellees and dated August 28, 1971, and returned to appellees' residence with the new check. Appellees again rejected the payment, and this time they signed a statement that "Rose M. offered the check for $2,000.00 on Jon How dated

Sept. 1, 1970 which I refused. She later returned with one from Mrs. John Kai for Jon How which I refused to accept delivery at this time." Nevertheless, the process of closing the sale began. On September 14, 1971, after an additional confrontation between Mariani and appellees, the president of Richard H. Huff Realty, Inc. wrote a letter to appellees in which he acknowledged that "Mrs. Mariani told me that you . . . did not wish to consummate the sale . . . ." The concluding paragraph of the letter declared that:

"I will expect to hear from you or your attorney within 10 days from the date of this letter if you do in fact intend to withdraw from your commitment to sell. If I do not hear from you, I, together with my attorney, will consider that the sale shall proceed as outlined in the Sales Agreement."

No reply was forthcoming. In the meantime, to raise the $35,150.00 required on or before closing the sale, appellants sold their home in San Francisco. By December 16, 1971, appellants had performed all of their obligations required to close the sale. Appellees had not.

Appellants filed suit for specific performance of the contract or in the alternative to recover damages. After several amendments, a final judgment was entered declaring:

"(a) There was a Contract between the parties, and

(b) That said Contract is incapable of specific performance, and

(c) by their acts and conduct the Plaintiffs having waived their right to damages and being estopped to claim damages against Defendants,

NOW, THEREFORE, by reason of the law and the evidence,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that Judgment be and hereby is entered in favor of the Defendants . . . ."

Because of the approach we take, it is unnecessary to determine whether appellants have waived their rights to recover damages. We hold that the contract between appellants and appellees should be specifically performed.

There are five prerequisites before a contract can be specifically performed. First, there must be a contract; second, the terms of the contract must be certain and fair; third, there must be an absence of inequitable conduct on the plaintiff's part; fourth, there must be an absence of hardship to the defendant or the public outweighing the benefit to the plaintiff from performance of the contract; and fifth, there must be no other adequate remedy at law. Shreeve v. Greer, 65 Ariz. 35, 173 P.2d 641 (1946); H. McClintock, Handbook of the Principles of Equity 129 (1948). Appellees allege that the first four requirements have not been met. As to the last requirement, courts usually find that where the sale of real estate is involved there is no adequate remedy at law. D. Dobbs, Handbook on the Law of Remedies 796 (1973).

Appellees first claim that the Deposit Receipt and Agreement never ripened into a contract because appellants manifested a qualified acceptance. This argument is based upon the assumption that by postdating the $2,000 check appellants did not unequivocally accept appellees' offer. This argument is belied by statutory and case law. A.R.S. § 44–2514(A) specifically provides, "the negotiability of an instrument is not affected by the fact that it is . . . postdated." In addition, A.R.S. § 44–2534(D)(1) declares that knowledge that an instrument is postdated ". . . does not of itself give the purchaser notice of a defense or claim." The fact that a check is postdated does not ". . . qualify [it] or make the promise conditional." Eckley v. Steinbrecher, 482 P.2d 392, 394 (Colo.App.1971). Accord, Nat'l Currency Exchange, Inc., # 3 v. Perkins, 52 Ill.App.2d 215, 201 N.E.2d 668 (1964); Roland v. Republic Nat'l Bank, 463 S.W.2d 747 (Tex.Civ.App.1971). Even if the postdated check were a quali-

fied acceptance, the presentation of the second check within a few hours caused the offer to ripen into a contract. The Deposit Receipt and Agreement contained a clause which provides, "Agent is hereby given . . . . . . . days to obtain the seller's acceptance hereof, during which period this offer is irrevocable . . . ." By leaving the space blank, the agent had a reasonable period of time to create a contract, and the offer was irrevocable for that reasonable period of time. Therefore, appellees' revocation of the offer after a few hours, being unreasonable, was ineffective, and upon appellants' acceptance, the contract was born.

■ Appellees claim the contract lacked the requisite specificity in two areas: "(a) The rental agreement is not specifically enforceable for lack of certainty as to term. (b) The sale of personal property (trailers) is not specifically enforceable for lack of certainty as to price." The rental portion of the contract is sufficiently certain; until appellees' trailers are removed from the lot, appellees are liable to pay the specified price. Our analysis of the contract convinces us that what appellees refer to as the "sale" of appellees' trailers is nothing more than an option to buy. In support of the claim that a sale was involved, appellees refer us to that portion of the printed contract which states, "The undersigned purchaser hereby agrees to purchase the above described property at the price and under the terms and conditions herein set forth." Yet, at appellees' behest, the "option to buy" clause of the contract was added. Two rules of contract construction lead us to the conclusion that only an option to buy appellees' trailers was involved. First, if written provisions are inconsistent with printed provisions of a contract, the written matter prevails. Babbitt Bros. Trading Co. v. Marley, 28 Ariz. 589, 238 P. 392 (1925); Deuel v. McCollum, 1 Ariz.App. 188, 400 P.2d 859 (1965). Second, the terms of a contract are construed most strongly against their drafters. Harford v. Nat'l

Life & Cas. Ins. Co., 81 Ariz. 43, 299 P.2d 635 (1956). If a court should otherwise order specific performance,

". . . the mere fact that a contract, definite in material respects, contains some terms which are subject to further negotiation between plaintiff and defendant will not bar a decree for specific performance . . . ." City Stores Co. v. Ammerman, 266 F.Supp. 766, 775 (D. D.C.1967), aff'd, 129 U.S.App.D.C. 325, 394 F.2d 950 (D.C.Cir. 1968).

Thus, the second prerequisite to a decree of specific performance has been met.

■ Appellees claim that appellant-husband has twice acted inequitably: First, by dodging "his obligations to buy the tractors"; and second, by his tardy payment of the closing money. As noted above, appellants had no obligation to buy, but merely an option to buy, the trailers. The contract provided that, "After confirmation of sale the purchasers shall have 120 days to close excrow [sic]." Our calculation of days indicates that the closing was completed 120 days after the accepted offer was presented to appellees. There was no inequitable conduct on appellants' part.

■ Finally, appellees argue that any benefit to appellants would be offset by the public hardship of forcing appellees to surrender possession within two days after closing, "thereby compelling Fulkerson to evict more than a score of innocent families from their homes, by removal of the trailers they were renting from him . . . ." Our reading of the contract makes no such hardship necessary. Rather, the contract specifically provides that appellees would pay appellants rental on the spaces occupied by appellees' trailers until they were removed. Thus, while appellants are entitled to possession of the trailer park two days after closing, we read the contract to allow a reasonable period of time to remove appellees' trailers during which appellants will be paid an appropriate rent.

Because the contract meets all the requirements to warrant specific performance, the judgment of the court below is reversed and the cause is remanded with directions to enter judgment in favor of appellants.

HATHAWAY, C. J., and KRUCKER, J., concur.