Tom BOUDREAU and Mary Belle Boudreau, husband and wife, Plaintiffs-Appellees,

v.

BORG–WARNER ACCEPTANCE CORPORATION, a Delaware Corporation, Defendant-Appellant.

No. 77–3250.

United States Court of Appeals, Ninth Circuit.

Jan. 22, 1980.

Rehearing Denied May 2, 1980.

---

J. Phillip Holcomb, Whitehill, Berger, Gin & Karp, Tucson, Ariz., argued for defendant-appellant; Leonard Karp, Whitehill, Berger, Gin & Karp, Tucson, Ariz., on the brief.

Eric M. O'Dowd, Tucson, Ariz., for plaintiffs-appellees.

Before WALLACE and SNEED, Circuit Judges, and SOLOMON *, District Judge.

SNEED, Circuit Judge:

This is a diversity case. The appellant, a secured creditor of the appellees, appeals from a directed verdict for conversion and a jury award of $14,271.34 compensatory damages and $65,000 punitive damages.

The issues on appeal are: (1) Did the district court err in its interpretation of the Security Agreement under which it conditioned the creditor's possessory rights upon the debtor's failure to accede to a demand for delivery? and (2) Does appellant's security interest in the appellees' "inventory" extend to inventory other than that acquired under the floorplan financing arrangement? We hold that the Security Agreement created a security interest in the debtor's entire inventory and that the right to self-help repossession accrued upon the debtor's failure to pay for floorplanned merchandise which had been sold. We reverse and remand.

Jurisdiction is conferred by 28 U.S.C. § 1291 (1976).

## I.

### FACTUAL BACKGROUND

Pursuant to a plan to expand his television repair business to include retail sales, appellee Tom Boudreau entered into a wholesale floorplan financing arrangement with appellant Borg-Warner Acceptance Corporation (BWAC). BWAC extended Boudreau credit to acquire new merchandise in exchange for a security interest in Boudreau's "inventory." The Security Agreement provided that Boudreau must repay BWAC upon the sale of financed merchandise.

On February 8, 1971, during a routine inventory of Boudreau's store, a BWAC representative determined that several financed items had been sold out of trust and submitted an inventory worksheet to Boudreau showing $810.07 due BWAC. On the following day Boudreau's shop was burglarized and many financed items were stolen. Although Boudreau reported the theft to the police and to his insurance company, which had issued a policy that named BWAC as a loss payee, he did not inform BWAC of the burglary.

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

On February 22, 1971, Kravitz, another BWAC representative, conducted a follow-up inventory of financed merchandise in Boudreau's store. In Boudreau's absence, Kravitz loaded floorplanned and non-floorplanned inventory and certain non-inventory items into a U-Haul. During the course of the removal, Boudreau's employee contacted Boudreau's attorney, Strickland, who informed Kravitz that some of the missing financed items were covered by theft insurance and requested that Kravitz wait for Boudreau to return before departing. Boudreau arrived and after some discussion between Kravitz and him, the inventory worksheet was adjusted slightly in Boudreau's favor. However, the parties were unable to reach a satisfactory agreement and Kravitz left with all of the items originally loaded in the U-Haul.

In response to a demand by Strickland, Kravitz subsequently returned some of the non-inventory property (i. e., electronic testing equipment and tools). Boudreau refused to sign a release for the remaining items taken away and in due course commenced this action in the district court. Its jurisdiction, rested on 28 U.S.C. § 1332 (1976).

The district court held that although a monetary default activated BWAC's right to accelerate the debt, the right to self-help repossession accrued only upon Boudreau's refusal to deliver the property on demand. On the basis of this interpretation of "default," and a finding that BWAC failed to issue such a demand prior to removing the items from Boudreau's store, the court directed a verdict for the plaintiff. The defendant BWAC presently appeals from the directed verdict and a jury award of $14,271.34 compensatory damages and $65,000 punitive damages.

## II.

### THE MEANING OF "DEFAULT"

Appellant contends that a "default," which triggers its possessory rights, occurred when Boudreau failed to meet his monetary obligations. We agree. The narrow definition of "default" adopted by the district court violates the primary rule of contract interpretation which rule requires an examination of the intent of the parties. *Cavanagh v. Schaefer*, 112 Ariz. 600, 545 P.2d 416 (1976). The specific incorporation of the Uniform Commercial Code in Paragraph 10 suggests that the parties intended to create an unconditional right of self-help repossession. Furthermore, the explicit description of "default" in the first sentence of paragraph 10 indicates that this meaning should attach to any subsequent reference to "default." *Brady v. Black Mountain Investment Co.*, 105 Ariz. 87, 459 P.2d 712 (1969). The so-called plain and ordinary meaning rule of contract interpretation also supports appellant's position. Support is also provided by *Whisenhunt v. Allen Parker Co.*, 119 Ga.App. 813, 168 S.E.2d 827, 830 (1969), in which "default" in a secured transaction context was given "its generally accepted meaning of failing to perform *or pay*" (emphasis added). It is true that the court in *Klingbiel v. Commercial Credit Corporation*, 439 F.2d 1303 (10th Cir. 1971), in adopting a definition of default, distinguished the creditor's rights of acceleration of the debtor's obligation to pay from that of repossession of the collateral. However, although a refusal to accede to a delivery demand was recognized as a species of "default," the court clearly considered monetary "default" sufficient to activate the creditor's possessory rights.

The lower court appears to have relied on the rule that ambiguities in a contract are construed against the draftsman. *See How v. Fulkerson*, 22 Ariz.App. 467, 528 P.2d 853 (1974); *Allison Steel Manufacturing Co. v. Superior Court*, 22 Ariz. App. 76, 523 P.2d 803 (1974). This was error. The contract as we interpret it is not ambiguous. Ambiguity is not established merely by the fact that the parties disagree as to the meaning of the provision. *Grossman v. Hatley*, 21 Ariz.App. 581, 522 P.2d 46 (1974). Nor is an appellate court bound by a lower court's conclusions with respect to the existence of ambiguity. It may independently determine the presence of ambiguity in a contract. *See Polk v. Koerner*,

**1080**

111 Ariz. 493, 533 P.2d 660 (1975); *Federal Insurance Company v. P.A.T. Homes, Inc.,* 113 Ariz. 136, 547 P.2d 1050 (1976).

### III.

### THE DEFINITION OF "INVENTORY"

Having found that Boudreau was in "default" we now must determine the scope of BWAC's security interest. Appellee once more insists that ambiguities be resolved against the draftsman. *See How, supra,* and *Allison, supra.* So resolved, BWAC's security interest should be limited to floorplanned merchandise. Appellee notes that the term "inventory" is used in both an expansive and restrictive sense throughout the Security Agreement. Indeed, the references to "certain inventory" and "said inventory" in the introductory paragraph are arguably confined to floorplanned merchandise. Paragraphs 1, 2 and 3 are not inconsistent with this narrow interpretation of the term.

However, paragraph 4 refers to "all Debtor's inventory" and "all present inventory in Debtor's possession as well as any and all subsequently acquired by way of replacement, substitution, addition or otherwise and proceeds." Appellee contends it is this paragraph that creates an ambiguity as to the meaning of "inventory" which must be resolved against BWAC as the draftsman.

We conclude, however, that paragraph 4 represents the parties' explicit intention to subject Boudreau's entire inventory to BWAC's security interest. It unequivocally refers to all "inventory." It should be given its plain meaning. *See* Ariz.Rev.Stat. § 44–3109(4) (1967); *Community Bank v. Jones,* 278 Or. 647, 566 P.2d 470 (1977). Furthermore, paragraph 4 directly addresses the creation of BWAC's security interest. The dispositive force of this portion of a security agreement has been recognized. *See Mitchell v. Shepherd Mall State Bank,* 324 F.Supp. 1029 (W.D.Okl.1971), *affirmed,* 458 F.2d 700 (10th Cir. 1972); *In re Little Brick Shirthouse, Inc.,* 347 F.Supp. 827 (N.D.Ill.1972). Both decisions recognize

that the provision which creates the security interest should be looked to exclusively to determine the type of property subject to that interest.

Accordingly, we hold that paragraph 4's delineation of BWAC's security interest is not qualified by other references to "inventory" which appear to be limited to floorplanned merchandise (i. e., paragraphs 6 and 7 and line 8 of paragraph 10). Under paragraph 4, BWAC acquired a security interest in all of Boudreau's "inventory," as defined by the Arizona version of the Uniform Commercial Code. Ariz.Rev.Stat. § 44–3109(4) (1967). It follows that all of Boudreau's "inventory" was subject to BWAC's paragraph 10 right to self-help repossession.

The district court's directed verdict for conversion of non-floorplanned inventory is reversed. The case is remanded for a determination of BWAC's liability for conversion of non-inventory property.

Reversed and Remanded.