Stanton R. ESECSON, Plaintiff-Appellant,

v.

Donna BUSHNELL, Defendant-Appellee.

No. 82CA0239.

Colorado Court of Appeals, Div. I.

Feb. 3, 1983.

Rehearing Denied March 17, 1983.

Allen G. Reeves, Denver, for plaintiff-appellant.

Edward M. Billeck, Denver, for defendant-appellee.

ENOCH, Chief Judge.

Plaintiff (seller) appeals from a judgment denying his claim for liquidated damages attributable to the alleged breach of a contract for the purchase of a condominium by defendant (buyer). We reverse and remand.

On March 13, 1981, the parties entered into a "receipt and option contract" whereby buyer agreed to purchase seller's condominium. The contract called for an earnest money payment of $7,624, which was to be paid in part by a "credit" to buyer at closing of $2,624 to compensate her for the cost of obtaining the loan. The earnest money balance of $5,000 was paid by personal check post-dated to March 24, 1981. Buyer, a stockbroker, testified that she told seller that there were insufficient funds in her account and that she needed time to sell some stock in order to obtain necessary funds to cover the check.

The contract provided that time was of the essence and that:

"In the event a payment or other condition hereof is not made, tendered or performed by the purchaser, then this contract shall be null and void and of no effect, and both parties hereto released from obligations hereunder, and all payments made hereon shall be retained on behalf of the seller as liquidated damages."

On March 19, 1981, buyer went to New York and was offered a job there. She immediately instructed her secretary to telephone seller and advise him that she was "unable" to purchase the condominium. Subsequently, her secretary called seller and told him that her employer would be unable to go through with the purchase. The evidence as to his response is in conflict, but indicates that seller replied either, "no problem, have her call," or, "that's fine, have Donna call me."

While attempting later to telephone buyer, who was still in New York, seller had several further conversations with buyer's secretary. During one of these conversations, seller asked if he could cash the $5,000 check. The secretary replied that she knew nothing about the check and he would have to discuss it with buyer. During some of these conversations seller testified that he may have again repeated "no problem" with respect to buyer's actions.

Seller testified that he deposited the earnest money check on March 26, 1981, but it was returned for insufficient funds on April 2 or 3. Shortly thereafter, buyer, having been notified by her bank that seller wished to cash the check, called seller to ask him why he had tried to cash it. He told her that it was her right to "walk away from the purchase" but that she had forfeited the earnest money by doing so. A subsequent attempt to cash the check was also unsuccessful, because buyer had requested her bank to stop payment on the check.

Following a trial to the court, the court entered judgment for buyer, finding that the parties rescinded and abandoned the contract by agreement and conduct on March 19, that the contract lacked consideration, and that the seller failed to prove any actual damages. Accordingly, judgment was entered for buyer, and this appeal followed.

## I.

■ Initially, seller contends that the trial court erred in holding that the "receipt and option" contract lacked consideration because buyer tendered and seller accepted a post-dated check. We agree with his contention.

In its oral findings at the conclusion of the trial, the court explained its decision by stating that "a post-dated check means nothing. So at the time the contract was entered into (March 13, 1981), there would be no consideration until the 24th of March, 1981." Such a view relies upon the proposition that the sole value of a check lies in the ability of a payee or other holder to convert the check immediately into cash.

However, such an approach totally ignores the concept of a check as a legally enforceable obligation of the maker. The fact that a check is post-dated does not affect its negotiability, § 4–3–114, C.R.S. 1973, nor does that fact qualify the check or make conditional the promissory obligation represented by the check. *Eckley v. Steinbrecher,* 482 P.2d 392 (Colo.App.1971) (not selected for official publication); *How v. Fulkerson,* 22 Ariz.App. 467, 528 P.2d 853 (1974); *See National Currency Exchange, Inc. v. Perkins,* 52 Ill.App.2d 215, 201 N.E.2d 668 (1964). Further, although a stop-payment order on a post-dated check forbids payment by the bank to the payee or endorser, the maker remains liable on the instrument. Sections 4–3–413(2) and 4–4–403, C.R.S.1973; *see First National Bank v. McKay,* 521 S.W.2d 661 (Tex.Civ.App.1975). Consequently, we hold that a post-dated check constitutes valid consideration for a contract.

## II.

■ We also agree with seller's contention that the trial court erred in concluding that seller was not entitled to enforce the liquidated damages clause because the contract was terminated before the post-dated earnest money check became payable.

Buyer admitted in her pleading that the check was given as "part payment" of the earnest money provided for in the contract. In *Horton v. Hedberg,* 143 Colo. 62, 351 P.2d 843 (1960), which involved a note given in place of a cash down payment, our Supreme Court stated:

"Had the buyers deposited cash rather than their promise to pay upon execution of the option, there can be no question but that the forfeiture clause would be operative as against a claim for refund. In the eyes of the law, their promissory note is as good as their cash."

This reasoning applies with equal force to a post-dated check. As noted above, such a check obligates the drawer to pay the draft after dishonor and necessary notice of dishonor. Sections 4–3–114(2) and 4–3–413(2), C.R.S.1973.

We conclude that the liquidated damages clause was enforceable, even in the absence of proof of actual damages. *Lundstrom v. Hackl,* 40 Colo.App. 322, 579 P.2d 85 (1974). However, the contract limits liquidated damages to payments already made at the time of default. The only payment made was the $5,000 represented by the post-dated check. The balance of the earnest money, the $2,624 credit for obtaining the loan, was never "paid" since financing was neither sought nor approved, and since the sale was never closed.

## III.

Seller's final contention is that the evidence does not support the trial court's finding that the parties mutually rescinded and abandoned the contract on March 19, 1981. We are unable to determine from its oral and written orders how the trial court arrived at the conclusion that the contract was mutually rescinded and abandoned, because the trial court made no specific findings of fact to support such a conclusion.

In a trial to the court, the trial court's findings of fact and conclusions of law must be so explicit as to give the appellate court the opportunity to determine on what grounds the trial court reached its decision. C.R.C.P. 52(a); *see In re Marriage of Wildin,* 39 Colo.App. 189, 563 P.2d 384 (1977); *Hipps v. Hennig,* 167 Colo. 358, 447 P.2d 700 (1968). This is true whether the findings are oral or written. *See Mowry v. Jackson,* 140 Colo. 197, 343 P.2d 833 (1959).

We are also unable to determine what test the trial court applied in conclud-

ing that a rescission had occurred. Mutual rescission requires assent to that rescission by *both* parties obligated under the contract. *Randall v. Carroll,* 30 Colo.App. 45, 488 P.2d 250 (1971). One party to an executory contract, in the absence of fraud or a special reason, cannot rescind. *Western Airlines, Inc. v. Hollenbeck,* 124 Colo. 130, 235 P.2d 792 (1951). Further, an agreement to rescind a contract requires a "meeting of the minds" with "the clear knowledge and understanding of the parties." *Western Airlines, Inc. v. Hollenbeck, supra.* Where mutual rescission is founded on the acts and conduct of the parties, then such acts must be "inconsistent with the existence of the contract." *See Cruse v. Clawson,* 137 Mont. 439, 352 P.2d 989 (1960).

Accordingly, the judgment is reversed and the cause is remanded with directions to make the required findings of fact and conclusions of law and to enter judgment thereon in accordance with the views expressed herein.

PIERCE and SMITH, JJ., concur.