**CONTINENTAL INSURANCE COMPANY,**
**Appellant,**

**v.**

**STEWART & STEVENSON SERVICES,**
**Inc., et al., Appellees.**

**No. 13131.**

Court of Civil Appeals of Texas.

Houston.

Oct. 17, 1957.

Rehearing Denied Nov. 7, 1957.

Robert Eikel, Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, and Jefferson D. Giller, Houston, for appellee Stewart & Stevenson Services, Inc.

Escar R. Wren, Houston, for appellee Colter Corp.

WERLEIN, Justice.

This suit was brought in the name of appellee, Stewart & Stevenson Services, Inc., but for the benefit of its insurer and subrogee, The Insurance Company of North America, against Emanuel Gillette, purchaser of an engine from Stewart & Stevenson Services, Inc., and appellant, Continental Insurance Company which issued a policy of insurance covering Mr. Gillette's fishing boat, the Margaret R. The basis of plaintiff's claim is that Mr. Gillette at the time of purchasing the engine placed in his boat, Margaret R, agreed to insure the vessel for the benefit of Stewart & Stevenson Services, Inc., and that the plaintiff became subrogated by virtue of an equitable lien to Gillette's rights to the proceeds

of the policy of marine insurance issued by the defendant, Continental Insurance Company, on said vessel Margaret R. The Colter Corporation, a party to the policy of the insurance covering the Margaret R, was made a party at interest.

The case was tried without a jury and the trial court rendered judgment in favor of appellee, Stewart & Stevenson Services, Inc., against Emanuel Gillette and appellant, Continental Insurance Company. No judgment was rendered against the Colter Corporation. Emanuel Gillette, having failed to appeal, this case is now properly before this Court on the appeal of the appellant, Continental Insurance Company.

The testimony was that on or about September 20, 1952, Mr. Gillette purchased from appellee, Stewart & Stevenson Services, Inc., through its salesman, Mr. Loden, a remanufactured 6–71 General Motors marine engine, complete with accessories and standard equipment, for and in consideration of a cash payment of $600 and the promise of the said Emanuel Gillette to pay to the order of plaintiff at the First National Bank in Houston, Harris County, Texas, the sum of $2,877.60 in installments of $119.90 on the 16th day of each month in accordance with a certain promissory note dated September 20, 1952, executed by the defendant Gillette. The note referred to was secured by a mortgage executed by Gillette on the Margaret R which contained a provision that the defendant Gillette would insure the Margaret R for the benefit of appellee, Stewart & Stevenson Services, Inc. (hereinafter called Stewart & Stevenson). Mr. Gillette testified that at the time or before the purchase was made he was told by the salesman for Stewart & Stevenson that it carried insurance for its own protection on engines sold, and that the agent made no request for Gillette to take out insurance to cover the engine in question. Gillette further testified that he did not agree to take out insurance to cover the engine bought from Stewart & Stevenson for that company's interest in the engine, because he had been told by said agent that

Stewart & Stevenson carried its own insurance. Thereafter, Gillette did take out insurance with appellant, Continental Insurance Company, upon the entire vessel, including her engine, boilers and appurtenances, upon a "hull" form to cover his own interest in the Margaret R, but Stewart & Stevenson was not a party to such policy and no assignment of the policy or the proceeds thereof was made to Stewart & Stevenson.

The boat became a total loss and Gillette made demand through his insurance agents on appellant, Continental Insurance Company, to pay the amount due under the policy. After Stewart & Stevenson learned of the loss, they wrote Continental Insurance Company on February 17, 1953, claiming a right to the proceeds of the insurance. Continental Insurance Company immediately acknowledged this demand and said they would make inquiry, this letter being dated February 19, 1953. After inquiry, the Continental Insurance Company's agent was informed that Mr. Gillette refused to acknowledge the right of Stewart & Stevenson to any portion of the proceeds of the insurance covering the Margaret R, and on February 26, 1953, Continental Insurance Company informed Stewart & Stevenson that it could not alter the insurance agreement and asked Stewart & Stevenson to obtain a request from the assured permitting payment to Stewart & Stevenson. Nothing further was heard immediately from Stewart & Stevenson and on March 11, 1953, the Continental Insurance Company paid the proceeds of the policy to Mr. Gillette and Colter Corporation.

Appellee, Stewart & Stevenson, contends that because of the provision in the mortgage aforesaid there was in effect an equitable assignment of a portion of the insurance proceeds, creating an obligation on the part of Continental Insurance Company to pay Stewart & Stevenson the amount of Gillette's indebtedness to Stewart & Stevenson, and that the payment of the entire amount by Continental Insurance Company to the named insureds did not excuse Con-

tinental Insurance Company or relieve it of its obligation under the equitable assignment made by Gillette in executing said mortgage.

In their first proposition, appellant strenuously contends that Stewart & Stevenson (by its subrogee, the Insurance Company of North America) had no right to any part of the proceeds of the insurance taken out by Gillette insuring his interest in his boat, because there was never any agreement by Gillette to insure the boat's engine (the subject matter of the debt) for the account of Stewart & Stevenson, and that the trial court erred, in disregarding the undisputed evidence, to hold otherwise. Appellant contends that Stewart & Stevenson, through its salesman, a Mr. Loden, agreed with the defendant, Gillette, for installation in defendant's boat, the Margaret R, of the engine in question and that at the time of such sales agreement Stewart & Stevenson had a broad policy of insurance covering their interest in engines sold, with the real party at interest, the Insurance Company of North America, and that at the time of such agreement Gillette was told by a representative of Stewart & Stevenson that it carried its own insurance on its engines, and that it was only because of such agreement that he bought the engine.

Gillette testified that the agent of Stewart & Stevenson, in speaking of the engine in question and also another motor [not involved herein] which was bought by Gillette at the same time from Stewart & Stevenson, stated, "He *told* me those two motors for $600 apiece down, and if they sink tonight, I don't owe another dime." This witness further testified:

"For two of them. With the understanding, if that motor sinks tonight, doesn't owe another dime on them, they are paid for, Stewart & Stevenson takes out a policy to cover those motors in case of loss, and that is the reason I didn't finish paying it off. When that boat sunk, I called Stewart & Stevenson up as soon as I got in and let them know the boat had sunk, so they could collect their money."

This witness was asked whether or not he would have purchased or entered into a contract of purchase for those engines if the agent's statement as to him not owing a dime if they were lost had not been made. He testified:

"A. Well, if I had, I would have made other arrangements. I would have made arrangements to take care of those motors if I would have bought them.

"Q. What would have been your arrangement? A. I would have took out insurance on them to protect myself and the company.

"Q. If he had not made those statements—A. That's right.

"Q. Now, you did take out what we in the fishing industry call 'hull insurance' on the 'Margaret R,' didn't you? A. That's right. Yes, sir.

"Q. Did you testify that you took that insurance out for your protection? A. That's right.

"Q. For anyone else's protection? A. Colter Corporation.

"Q. Because you owed Colter Corporation a debt? A. That's right, because I owed them, and I didn't feel I owed Stevenson anything whatsoever. They were supposed to take out their own policy, according to the agreement.

"Q. Did Stewart & Stevenson after you started making the installment payments on the note—It is alleged and been entered in evidence you made some three or four installment payments? A. I don't remember how many I made, but I always kept them up until she sunk.

"Q. In other words, you had made some installment payments before the vessel was lost? A. Yes, sir.

"Q. All right. After your first payment, installment payment, did Stewart & Stevenson at any time ever request to you or make demand on you to take out any insurance for their benefit? A. Not at all. Not at all."

The agent of Stewart & Stevenson, Mr. Loden, who made the sale to Gillette, testified as follows:

"Q. Before Mr. Gillette signed that note and mortgage, did you have any conversations with him concerning insurance on that engine that you sold him? A. Yes, I did.

"Q. Will you tell the Court what those conversations were? A. I told Mr. Gillette, just like I tell all my customers that buy engines on the time-payment plan, that we take out a single-rate insurance, which we call it blanket insurance or single-rate insurance, that we take out on all of our engines that go out of the plant, either marine, industrial, oil field, or otherwise, and this insurance is for our own protection in case an engine is dropped off a truck or whatever the case might be, and it is strictly in order for our protection and does not protect the customer in any phase at all and just for us in our own protection we take it out, and it does not protect the customer in any way.

"Q. Is that the extent of the conversation you had with Mr. Gillette concerning insurance on this engine? A. Yes. That is all I recall having said anything—It was a long time ago, but I—I wouldn't tell him anything different than I tell anybody else when I sell an engine on time.

"Q. Did you tell Mr. Gillette that if the engine was lost, he would not have to pay for it? A. No.

"Q. Did you tell Mr. Gillette that Stewart & Stevenson Services, Inc., carried insurance that was for his benefit? A. No, I did not."

Although the agent of Stewart & Stevenson testified that he did not request Mr. Gillette to take out insurance for the account of Stewart & Stevenson and that he informed Mr. Gillette that Stewart & Stevenson took out a single-rate insurance or blanket insurance on all of their engines, he further testified that such insurance was for the protection of Stewart & Stevenson and that it did not protect the purchaser or customer in any phase at all and was just for their own protection. He further testified that he did not tell Mr. Gillette that if the engine was lost that he would not have to pay for it, and that he did not tell Mr. Gillette that Stewart & Stevenson carried insurance that was for his [Gillette's] benefit.

Loden further testified that he specifically told Gillette he would have no protection at all if the boat sank. After the loss of the Margaret R. Loden testified he called on Gillette before appellant had paid the money to him, to ask him to enter the name of Stewart & Stevenson on the policy or loss draft. Gillette refused, stating that he thought the engine was insured by Stewart & Stevenson and that he didn't owe any more on the engine inasmuch as it had sunk. To this Loden replied that if he [Gillette] was under the impression that they [Stewart & Stevenson] had insurance that protected him, he misunderstood because the insurance was strictly for their own protection and did not protect Gillette and if the boat sank he still owed the money and that the insurance company would collect the money for the debt owed on the engine.

On this conflicting testimony, the trial judge, in his findings of fact, found as follows:

"13. Upon consideration of conflicting testimony I find as a fact that no representative of the Plaintiff represented to Defendant Gillette that Gillette would not be required to carry insurance for the benefit of the Plaintiff.

"14. Upon consideration of conflicting testimony I find as a fact that no representative of the Plaintiff represented to Defendant Gillette that Gillette's liability on his note to the Plaintiff would be extinguished upon loss of the Margaret R, or the engine, either because of insurance the Plaintiff may have carried or otherwise."

In our opinion the findings of the trial court hereinabove set out are supported by the evidence. It was the province of the trial court to pass upon the testimony of the witnesses Gillette and Loden and to accept or reject the same in whole or in part. Gillette's credibility was especially for the court since he was an interested party.

■ Appellant freely acknowledges in his brief that where the mortgagor and the mortgagee agree and contract that the mortgagor will take out insurance to cover the interest of the mortgagee in the property mortgaged, that such agreement to insure creates an equitable lien on behalf of the mortgagee to the proceeds of the insurance, to the extent of the interest of the mortgagee. Appellant contends that this equitable lien is based only upon agreement and that in the absence of an agreement, no lien arises. In this we are in accord with appellant. The law is well settled that a contract of insurance is personal to the insured and is for his indemnity and not for the indemnity of the holder of a lien on the property insured. Walter Connally & Co. v. Hopkins, Tex.Civ.App., 195 S.W. 656, affirmed Tex.Com.App., 221 S.W. 1082; Westchester Fire Insurance Company v. Thomas Goggan & Bros., Tex.Civ.App., 203 S.W. 163–166; McCulloch v. Zero Plate Co., Inc., Tex.Civ.App., 269 S.W.2d 830, error refused.

■ The law is equally well settled that where the mortgagor agrees to insure the mortgaged property for the benefit of the mortgagee, the mortgagee has an equitable lien on the proceeds of the policy to the extent of the debt secured by the mortgage. McCulloch v. Zero Plate Co., Inc., supra, and cases cited therein. Even though Gillette did not know of the provision in the mortgage requiring him to take out insurance for the benefit of Stewart & Stevenson, he was nevertheless obligated to do so. Walter Connally & Co. v. Hopkins, supra.

Appellant contends that the decision of the court below rests upon the refusal of the court to accept the undisputed testimony of the agent of Stewart & Stevenson and Mr. Loden. The testimony was all admitted and undoubtedly the court did consider the same in making its findings of fact.

■ Defendant further contends that the law is clear that the circumstances surrounding the execution of writings can be proved by parol, and that collateral agreements entered into at the time of the execution of the writings can be shown. The rule is well established that testimony which merely shows matter of inducement leading to the execution of a contract or which explains the circumstances under which it is executed is admissible and in no sense violates the parol evidence rule. It is well settled that the parol evidence rule does not apply to collateral undertakings or agreements *that are not contrary to the written contract*. Huddleston v. Wheeler Lumber, Bridge & Supply Co., Inc., Tex. Civ.App., 75 S.W.2d 715. If the prior discussions between Gillette and Loden, as alleged by appellant, had been given appellant's construction and had been given the dignity of a contract or agreement to the effect that it would not be necessary for Gillette to take out insurance to protect his indebtedness to Stewart & Stevenson, such agreement would be in violation of the parol evidence rule as it would be in direct conflict with the provision in the mortgage which was signed by Mr. Gillette at the time he purchased the engine, reading as follows:

"And the said party of the first part does further convenant and agree * * * that he will immediately pro-

cure said oil screw or vessel to be insured * * * for an amount at least equal to the amount which shall from time to time remain unpaid upon the said indebtedness and interest thereon, * * * and that he will immediately assign and deliver to said parties said policy or policies of insurance, * * * as a collateral security for the payment of said indebtedness. And if said first party shall fail to immediately procure, assign and deliver such policy or policies as aforesaid, * * * the said parties of the second part, * * * are hereby authorized to procure said oil screw or vessel to be insured as aforesaid, and to keep the policy or policies renewed; and the amount which they have to pay therefor shall be considered, and is hereby declared to be, an additional indebtedness hereby intended to be secured, and shall be repaid to said parties of the second part, * * * on demand, and shall bear interest at 4.5 flat per cent from the time of such payment until repaid."

Bains v. Robert & St. John Motor Co., Tex. Civ.App., 72 S.W.2d 703, no writ history; Firestone Tire & Rubber Co. v. Fisk Tire Company, 131 Tex. 158, 113 S.W.2d 175.

█ The foregoing provision in the mortgage constitutes an agreement on the part of Gillette to take out insurance for an amount at least equal to the amount remaining unpaid on the indebtedness and interest thereon, and to assign and deliver to Stewart & Stevenson said policy or policies of insurance as collateral security for the payment of said indebtedness. This is the agreement upon which appellee predicates its suit, claiming an equitable lien on the proceeds of the insurance policy. Stewart & Stevenson never took out any insurance under the foregoing provision and never called upon Gillette to pay for any insurance. In our opinion, under this agreement contained in the mortgage, which with the note constitutes the written contract between the parties, Stewart & Stevenson are entitled to the proceeds of the policy as found by the trial court, provided they gave proper and seasonable notice to the appellant of their claim to the proceeds of the policy. We, therefore, overrule appellant's first proposition.

Under proposition 2, appellant contends that Stewart & Stevenson cannot compel appellant to pay again under the policy issued to cover the loss of Gillette's boat, because Stewart & Stevenson never gave to appellant proper notice of its claim to be paid out of Gillette's insurance, and that the Court below disregarded the undisputed evidence in finding there was notice.

The evidence showed that on or about January 29, 1953, while the policy taken out by Gillette was still in full force and effect, the vessel, Margaret R, became a total loss. Thereafter on February 17, 1953, and before payment of the policy in question to the insured, Stewart & Stevenson, learning of the loss, wrote Continental Insurance Company claiming a right in the proceeds of the insurance to the extent of $2,517.90 and requesting that no payment be made under the policy without recognizing their rights and interest. To this letter the appellant replied by letter dated February 19, 1953, stating, "We wish to acknowledge receipt of your letter dated February 17, 1953, and have advised our Loss Department of your wishes on the above. We have requested our assured to furnish us with additional information in order that we may proceed further with the handling of the loss. We should have this information within the next few days and will keep you posted on developments." Thereafter, on February 26, 1953, appellant again wrote Stewart & Stevenson in part, "We believe it will be necessary for you to obtain a letter from the assured and from the Colter Corporation requesting that your name be inserted in the loss draft."

On March 11, 1953, without any further notice to Stewart & Stevenson, the appellant paid the amount of $5,645 to Gillette and the Colter Corporation. Captain

Monroe Williamson, the agent who handled the matter for the appellant, testified that after writing the letter of February 19th, he did not have any contact with anyone from Stewart & Stevenson concerning their claim, he did not attempt to locate the marine mortgage in question, and he did not ask Stewart & Stevenson to produce any further facts on the basis of its claim. When asked if he had an opinion at the time he wrote the letter of February 26th as to whether or not Mr. Gillette was willing to have Stewart & Stevenson named in the loss draft, he stated, "I don't recall any opinion. Just simply a case of them not complying with the request of our last letter to Stewart & Stevenson. Therefore, we went ahead and issued the draft."

On this testimony, the trial court, in its findings of fact, very properly found as follows:

"17. Upon receiving the aforesaid letter of February 17, 1953, Defendant Continental Insurance Company acting by and through Marine Office of America and Monroe Williamson made no inquiry from the Plaintiff for further information as to the basis of Plaintiff's claim before Continental Insurance Company paid the proceeds of its insurance to Defendants Gillette and Colter Corporation. Further inquiry of the Plaintiff would have furnished Defendant Continental Insurance Company with whatever information it required concerning the basis of the Plaintiff's claim.

"18. Before making the payment of the proceeds of the insurance to Defendant Gillette and Defendant Colter Corporation, Defendant Continental Insurance Company had knowledge of such facts as would cause a prudent man to make further inquiry into the basis of the Plaintiff's claim, which inquiry by the use of ordinary intelligence would have revealed the facts desired by Continental Insurance Company as to the basis of the claim.

"19. The Plaintiff did nothing by either action or inaction which lead Defendant Continental Insurance Company to believe that the claim of the Plaintiff could not be substantiated or would not be pressed."

The appellant had knowledge of such facts as would cause a prudent man to make further inquiry into the basis of Stewart & Stevenson's claim, and such inquiry would have revealed the basis of Stewart & Stevenson's claim to a part of the proceeds of the policy in question. In Flack v. First National Bank of Dalhart, 1950, 148 Tex. 495, 226 S.W.2d 628, at page 632, the Court said:

"Whatever puts a person on inquiry ordinarily amounts in law to notice, provided inquiry has become a duty and would lead to knowledge of the facts by the exercise of ordinary intelligence and understanding. In other words, one who has knowledge of such facts as would cause a prudent man to make further inquiry, is chargeable with notice of the facts which, by use of ordinary intelligence, he would have ascertained. * * *

" * * * as was said by Mr. Justice Jackson in a recent case (Brown v. Hart, Tex.Civ.App., 43 S.W.2d 274, 278), 'He is not warranted in shutting his eyes against the lights before him.' "

We quote from 39 Amer.Jur., Notice and Notices, Section 12, page 240:

"The rule has sometimes been said to be that whatever puts a person on inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding * * * For when one has actual knowledge of such facts as would put a prudent man on inquiry, it becomes his duty to make inquiry, and he is guilty of bad faith if he neglects to do so, and consequently he will be

charged with the actual notice he would have received if he had made the inquiry."

See, also, Hexter v. Pratt, Tex.Com.App. 1928, 10 S.W.2d 692; Minchen v. First National Bank of Alpine, Tex.Civ.App., 263 S.W.2d 601, ref. n. r. e.

■ The letter of February 17, 1953, addressed to appellant stating, "We are claiming an interest in the proceeds of that insurance to the extent of $2,570.90 and request that no payment be made under this policy without recognizing our rights and interests" certainly was sufficient to put appellant on inquiry and to require of appellant further investigation before paying the policy to the insured Gillette. We overrule appellant's second proposition.

■ Appellant's third proposition is to the effect that Stewart & Stevenson lost their rights by laches to any part of the proceeds of the policy in question. We cannot agree with this contention. There was no such delay or stale demand here as would warrant appellant paying out the proceeds of the policy without further investigation or inquiry, in view of the notice given by Stewart & Stevenson. The trial court very properly found as a fact that "The Plaintiff did nothing by either action or inaction which led Defendant Continental Insurance Company to believe that the claim of the Plaintiff could not be substantiated or would not be pressed." The court correctly concluded that the plaintiff was not estopped from asserting its rights against the defendants.

After receipt of the notice given by Stewart & Stevenson, appellant wrote in its letter of February 19, 1953, "We should have this information within the next few days and will keep you posted on developments." Thereafter, on February 26, 1953, appellant by letter requested Stewart & Stevenson to obtain a letter from the named insureds authorizing the insertion of its name in the loss draft. This Stewart & Stevenson undertook to do, with no success.

However, this additional assent from Gillette was not essential to the right of Stewart & Stevenson to a portion of the proceeds of the policy in view of the contractual provision in the mortgage requiring Gillette to procure insurance for the benefit of Stewart & Stevenson.

Appellant did not keep Stewart & Stevenson informed of any developments subsequent to the letter of February 26, 1953, but without further notice or warning paid the policy to the named insureds. Under these circumstances, it is our opinion that appellant made the payment at its own peril. Appellant had sufficient knowledge and notice from Stewart & Stevenson to realize that it was asserting a claim to a portion of the proceeds of the policy. It had that knowledge at the time it made the payment. We can find no unreasonable delay on the part of Stewart & Stevenson and no conduct that would estop it from asserting its claim.

■ Laches is similar to estoppel and rests upon the theory that because of the staleness of the demand, the defendant would be unconscionably prejudiced if the claim were not cut off. Wilson v. Meredith, Clegg & Hunt, Tex.Civ.App. Beaumont 1954, 268 S.W.2d 511–517, ref. n. r. e.

The Supreme Court of Texas, in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, at page 932, had this to say:

"On the question of estoppel we find that 'In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts;' * * * 'if an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel.'"

In this case no false representation was made nor was there any concealment of any material facts. The defendant had knowledge that a claim was being asserted by Stewart & Stevenson and had the means of obtaining further information concerning the claim by simply making inquiry of Stewart & Stevenson.

The judgment of the trial court is affirmed.