**FIRST NATIONAL BANK OF TRINITY, TEXAS, Appellant,**

**v.**

**Frank J. McKAY, Appellee.**

**No. 16476.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

March 20, 1975.

Joe J. Newman, Houston, for appellant.

Douglas P. Allen, Cleveland, for appellee.

COLEMAN, Chief Justice.

This is a suit to recover the amount of a post-dated check from its maker. The bank on which it was drawn refused pay-

ment because of a stop payment order. The plaintiff contends that it was an innocent purchaser for value. The case was tried to the jury and judgment was rendered for the defendant on the verdict.

On March 26, 1973 Frank J. McKay, the defendant, issued his check in the amount of $756.00 to H. V. Petro in connection with a building contract. While the check was dated March 29, 1973, the plaintiff, First National Bank of Trinity, Texas, accepted it for deposit on March 26, 1973, and permitted its depositor, Petro, to withdraw the funds prior to the collection of the check. The check was forwarded for collection through normal banking channels by the plaintiff, and when it was returned with a stop payment notation, the bank charged it back against Petro's account. Since the balance in the account at that time was $40.00, the bank tried to contact Mr. Petro to collect the difference, but was unable to locate him. On or about June 13, 1973, the bank demanded payment from Dr. McKay. Prior thereto, on April 15, Dr. McKay had settled his differences over the building contract with Mr. Petro, and had given him a release. In connection with this settlement Dr. McKay did not require that Mr. Petro return the check to him.

In answer to issues submitted, the jury found that the First National Bank of Trinity, Texas, was negligent in cashing the check in question without making further investigation of the fact that the check was dated March 29, 1973, and was presented for payment on March 26, 1973, and that such failure was the proximate cause of the bank's loss of $716.00. The jury failed to find that the bank was a holder in due course of the check in question. It found that the bank was guilty of laches as to Frank J. McKay. The term "laches" was defined as "a delay in enforcing rights not taken until the condition of the other party has become so changed that he cannot be restored to his former state, and thus such a delay as works a disadvantage to another."

At the conclusion of the testimony plaintiff moved for an instructed verdict, and after the verdict of the jury was returned, moved for a judgment notwithstanding the verdict. The plaintiff contends on appeal that the trial court was in error in refusing to sustain both motions for the reason that the evidence established as a matter of law that the bank was an innocent purchaser for value of the check in question, and that there is no evidence to raise an issue as to any defense authorized by law to the maker of a negotiable instrument as against a purchaser in good faith.

■ The disposition of this case is largely governed by the provisions of the Uniform Commercial Code, which has been adopted in Texas and may be found in Vernon's Texas Codes Annotated, Business and Commerce. Section 3.114(a), Uniform Commercial Code, provides: "The negotiability of an instrument is not affected by the fact that it is undated, antedated or postdated." The check in question is a negotiable instrument. Section 3.104, Uniform Commercial Code. Aetna Life and Casualty Co. v. Hampton State Bank, 497 S.W.2d 80 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.); Shotts v. Pardi, 483 S.W.2d 879 (Tex.Civ.App.—Corpus Christi 1972, writ dism'd); Roland v. Republic National Bank of Dallas, 463 S.W.2d 747 (Tex.Civ.App.—Waco 1971, writ ref'd n. r. e.).

A holder in due course is defined in Section 3.302 of the Uniform Commercial Code as being a holder who takes the instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. Section 3.304(d) of the Code provides that knowledge that the instrument is ante-dated or post-dated does not of itself give the purchaser notice of a defense or claim. It is not contended in this case that the plaintiff had notice of any claim or defense on the part of the defendant unless it was put on notice of some infirmity in the instrument by reason of the fact that it was

post-dated. Section 4.208, supra, provides that a bank has a security interest in an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied. Section 4.209, supra, provides that for the purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item provided that the bank otherwise complies with the requirements of Section 3.-302 on what constitutes a holder in due course.

As between a bank on which a check is drawn and the maker of the check, Section 4.403, supra, authorizes a stop payment order. Section 3.413, supra provides:

"(a) The maker or accepter engages that he will pay the instrument according to its tenor at the time of his engagement or as completed pursuant to Section 3.115 on incomplete instruments.

"(b) The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder or any indorser who takes it up. . . . "

■ The stop payment order, therefore, is effective to forbid the bank on which a check is drawn from paying the check, but it does not affect the liability of the maker of a check to its holder.

Section 3.307, supra, provides that unless specifically denied in the pleadings each signature on an instrument is admitted. It further provides that when signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense. After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he is in all respects a holder in due course.

If it be assumed that the defendant has established a defense as against the payee of the check, nevertheless the evidence es-tablishes as a matter of law that the bank is a holder in due course. There was no evidence to support the jury's failure to find this fact, and the issue should not have been submitted.

■ Section 3.305, supra, provides that a holder in due course takes a negotiable instrument free from all claims to it on the part of any person and of all defenses of any party to the instrument with whom the holder has not dealt, with certain exceptions which are not applicable here. Since Section 3.304, supra, specifically provides that knowledge that an instrument is ante-dated or post-dated does not of itself give the purchaser notice of a defense or claim, the knowledge on part of the bank imposed no duty on the bank to make any investigation to ascertain whether or not the maker had any defenses which would have justified him in refusing to pay the payee. The special issue submitted to the jury inquiring of the negligence of the bank in failing to make an investigation to ascertain the reason the check was post-dated cannot constitute a defense to the bank's cause of action. Aetna Life and Casualty Co. v. Hampton State Bank, supra; Riley v. First State Bank, Spearman, Texas, 469 S.W.2d 812 (Tex.Civ.App.— Amarillo, 1971, writ ref. n. r. e.); National Currency Exchange, Inc. #3 v. Perkins, 52 Ill.App.2d 215, 201 N.E.2d 668 (1st Dist. 1st Div. 1964); Currie-McGraw Co. v. H. & J. Friedman, 135 Miss. 701, 100 So. 273 (1924).

Section 3.511, Uniform Commercial Code, provides that presentment or notice or protest as the case may be is entirely excused when the maker of an instrument has himself dishonored the instrument or has countermanded payment or otherwise has no reason to expect or right to require that the instrument be accepted or paid. Comment 4 under this section provides:

" . . . A party who has no right to require or reason to expect that the instrument will be honored is not entitled to presentment, notice or protest. This

is of course true when he has himself dishonored the instrument or has countermanded payment. . . . "

The defendant testified that the only communication that he had with the bank was the letter of June 13, 1973 demanding payment of the check at issue. He testified that he knew the check was outstanding and that he had stopped payment on it. He thought that after he had stopped payment on the check he would not be called upon to pay it and he changed his position with Mr. Petro as a result of this by releasing him. In answer to a question as to why he did not obtain the check from the bank at the time he was settling with Mr. Petro, the defendant said: "I didn't know —obtained the check from the bank—I wasn't aware of the fact that Mr. Petro in his release was to return this with all the receipts he had promised to give us for bills that he had paid—had not paid."

■ The defense of laches is akin to that of estoppel. Two of the essential elements of laches are unreasonable delay by one having legal or equitable rights in asserting them, and a good faith change of position by another to his detriment because of the delay. Spring Branch Savings & Loan Association v. Gerst, 420 S. W.2d 618 (Tex.Civ.App.1967).

■■ In this case there was a delay of some two and one-half months between the date the check was issued and the date on which the bank demanded payment from the defendant. No basis has been shown from which the defendant could have concluded at any point that the bank would not demand payment of the check. In fact, the change of position upon which the defendant relies occurred prior to the time that the defendant knew the check was held by the plaintiff. It appears from the defendant's testimony that in making his settlement with Mr. Petro he relied on his erroneous belief that by stopping payment on the check he was discharged from liability on the check. While the testimony is somewhat confused it appears that Dr. McKay thought that his settlement with Mr. Petro included a requirement that the check be returned to him. There is no testimony showing the details of the settlement. There is no evidence beyond a scintilla showing a good faith change of position by Dr. McKay to his detriment because of the bank's delay in asserting its legal rights. Spring Branch Savings & Loan Association v. Gerst, 420 S.W.2d 618 (Tex. Civ.App.—Austin 1967, writ ref'd n. r. e.) ; Gulf, Colorado & Santa Fe Ry. Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1958) ; Dessommes v. Dessommes, 505 S.W.2d 673 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.) ; Continental Ins. Co. v. Stewart & Stevenson Services, Inc., 306 S.W.2d 415 (Tex.Civ.App.—Houston [1st], writ ref'd n. r. e.).

There is no evidence that Dr. McKay lacked knowledge of the fact that Mr. Petro had negotiated the check. He is charged in law with knowledge that the check is a negotiable instrument. There is no evidence that he inquired of Mr. Petro concerning this fact. There is no evidence that Dr. McKay changed his position to his detriment in good faith. City of Fort Worth v. Johnson, 388 S.W.2d 400 (Tex. 1964).

The judgment is reversed and judgment is here rendered for the plaintiff, First National Bank of Trinity, Texas, against Frank J. McKay, defendant, for the sum of Seven Hundred Sixteen ($716.00) Dollars with interest at the rate of 6% per annum from June 13, 1973, and all costs of court.