**REGENT INTERNATIONAL HOTELS, LTD., Appellant,**

v.

**LAS COLINAS HOTELS CORPORA-TION and Las Colinas Sports Club, Inc., Appellees.**

**No. 05–85–00268–CV.**

Court of Appeals of Texas, Dallas.

Dec. 17, 1985.

Rehearing Denied Jan. 28, 1986.

Melinda G. Jayson, Judith Birk Baumgartner, Akin, Gump, Strauss, Hauer & Feld, Dallas, Alan E. Harris, Farella, Braun & Martel, San Francisco, Cal., for appellant.

M. David Bryant, R. Matthew Molash, Hughes & Luce, Dallas, for appellees.

Before VANCE, McCLUNG and ZIMMERMAN, JJ.

VANCE, Justice.

Regent International Hotels, Ltd. appeals a summary judgment declaring that Las Colinas Hotels Corporation and Las Colinas Sports Club, Inc.[1] were entitled to terminate their contracts with Regent. Regent contends that the trial court erred because Las Colinas did not conclusively disprove its defenses of waiver, estoppel, and laches. We agree with Regent's contentions and, accordingly, reverse the summary judgment of the trial court and remand the cause for a trial on the merits. Regent also contends that the contracts are ambiguous and that the trial court erred by using the "plain meaning rule" to construe the agreements. However, Regent failed to plead ambiguity in its written response to Las Colinas's motion for summary judgment; therefore, Regent cannot raise this defense on appeal. TEX.R.CIV.P. 166-A.

On December 1, 1980, Las Colinas Hotels and Regent entered into a written contract (the "hotel contract") whereby Regent was to manage a conference center and hotel that was to be built by Las Colinas in Irving, Texas. Under this contract, Regent was obligated to plan, design, develop, advertise, and manage the facilities for Las Colinas. In exchange, Regent would receive management and incentive fees. The hotel contract provided for an operating term of twenty years to commence when Regent assumed the management position of the hotel-conference center.

On June 5, 1981, Regent and Las Colinas Hotels negotiated a second written contract (the "sports club contract") for the construction and management of a sports club in the same Las Colinas development in Irving, Texas. This contract required Regent to provide substantial technical assistance to Las Colinas in the construction of the sports club and to manage the club for a fee of $10,000 per month. Regent's management term was scheduled to continue until December 31 of the second full calendar year after the time when Regent began managing the club. Las Colinas Hotels assigned its rights under this contract to Las Colinas Sports Club, Inc., which assumed all the contract obligations. Soon after the hotel and sports club contracts were signed, Regent began performing its obligations to Las Colinas. On April 6, 1983, Regent began managing the completed sports club. Regent also began performance under the hotel contract by rendering technical assistance for the design and construction of the hotel-conference center. Regent also began promoting the Las Colinas Hotel Conference Center and Sports Club in materials given to guests in Regent Hotels worldwide.

The gravamen of Regent's dispute with Las Colinas is whether under the financing clause in both contracts Las Colinas may terminate the contracts. The financing clause provides:

> If Owner [Las Colinas] does not complete its arrangements for interim and permanent financing on terms satisfactory to Owner within twenty-four (24) months from the date of this Agreement, Owner

---

**1.** For the purpose of this opinion, we will refer to Las Colinas Hotels Corporation and Las Colinas Sports Club, Inc. as "Las Colinas," except where it is necessary to discuss each corporation separately.

may, in its sole discretion, terminate this Agreement by giving notice to Regent. Within thirty (30) days after the termination of this Agreement hereunder, Owner shall pay Regent all fees and other payments earned or due under the terms and provisions of this Agreement, whereupon neither Regent nor Owner shall have any rights against the other under this Agreement.

Twenty-four months after concluding each agreement, Las Colinas had secured interim, but not permanent financing. However, under the language of the clause, the failure of the financing condition does not result in an automatic termination of the contract. Las Colinas has the option either to terminate the contract or to continue performing its agreement with Regent: "Owner [Las Colinas] *may*, in its sole discretion, terminate this Agreement by giving notice to Regent." Consequently, even though Las Colinas did not obtain permanent financing, they did not terminate the agreements. Both Las Colinas and Regent continued to perform under the contracts. Finally, twenty-one months past the twenty-four month period of the hotel contract, and fourteen months past the twenty-four month period of the sports club contract, Las Colinas gave Regent notice of their termination of the contracts and filed suit for a declaratory judgment to enforce their right to terminate. When the suit was filed, Regent had been managing the sports club for more than a year, and, although the hotel-conference center was still under construction, Regent had been rendering substantial technical assistance for the project.

At the summary judgment hearing, Las Colinas contended that since it had not secured "permanent" financing within the twenty-four month period, the financing clause gave them the absolute right to terminate the contracts. Regent responded to Las Colinas's motion for summary judgment by raising the defenses of waiver, estoppel, and laches which would nullify Las Colinas's right to terminate and make Las Colinas liable for breach of the contracts. After considering these contentions, the trial court held that Las Colinas had the right to terminate the contracts and rendered summary judgment for Las Colinas.

■ In a summary judgment case, when the plaintiff is movant, the question on appeal, as well as in the trial court, is whether the movant's summary judgment evidence establishes that there are no issues of material fact as to each essential element of a cause of action so that the plaintiff-movant is entitled to judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). *See also* TEX.R.CIV.P. 166–A. The burden of proof is on the movant, and all evidence which tends to support the position of the party opposing the motion is accepted as true. *Farley v. Prudential Insurance Co.*, 480 S.W.2d 176, 178 (Tex.1972). In viewing the record of the case at bar, we find that Regent's summary judgment evidence did raise genuine issues of fact relating to its defenses of waiver, laches, and estoppel.

■ First, Regent contends that its summary judgment evidence raised fact issues that the financing condition in each contract was waived. A condition may qualify the duty of immediate performance of one party or of both parties to the contract. *Lallier v. Mueller*, 300 S.W.2d 293, 297 (Tex.Civ.App.—Galveston 1957, writ ref'd n.r.e.); 5 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 666 (3d ed. 1961). As a general rule, expressed conditions must be exactly fulfilled or no liability can arise on the promise which such conditions qualify. *W.T. Rawleigh Co. v. Izard*, 113 S.W.2d 620, 621 (Tex.Civ. App.—Eastland 1938, no writ); and 5 S. WILLISTON at § 675. However, the performance of a condition may be excused by waiver which is defined as: "an intentional abandonment or relinquishment of a known right or advantage ... [which] cannot be recalled or expunged ... It may result from implication and usage or from any understanding between parties which is of a character to satisfy the mind that a waiv-

er is intended." 5 WILLISTON at § 678. "Waiver implies a choice or an election to ... forego some advantage that might have been demanded." *Preston Tower Condominium Association v. S.B. Realty,* 685 S.W.2d 98, 103 (Tex.App.—Dallas 1985, no writ). "Waiver is essentially unilateral in its character; it results as a legal consequence from some act or conduct of the party against whom it operates; ... It need not be founded upon a new agreement or be supported by consideration, nor is it be essential that it based on estoppel." *United States Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353, 358 (Tex.1971).

In the instant case, the condition of securing interim and permanent financing within twenty-four months failed. Las Colinas did not secure the permanent financing within that time period. Consequently, Las Colinas could elect either to terminate the agreements or to continue being bound by them. In the affidavit testimony of George Rafael, Executive Vice-President of Regent Hotels, there is evidence that after the failure of the express financing condition in each contract, Las Colinas made continuous representations to Regent that the contracts were still in force. The affidavit also presented evidence that not only did Las Colinas continue its own performance beyond the twenty-four month period, but it urged Regent to continue performing and accepted the benefits of Regent's performance.

On the other hand, Las Colinas asserts that the "non-waiver" clause in each contract establishes as a matter of law that Las Colinas never waived any rights under the contracts:

> No condition agreement, term, or condition of this Agreement and no breach thereof shall be waived, altered or modified except by written instrument.

However, the affidavit of George R. Rafael, raised issues of fact as to whether Las Colinas did waive the financing conditions by written instruments. Rafael made the following statements:

Furthermore, throughout 1981, 1982, 1983, and 1984 (until August), I and other representatives and employees of Regent received innumerable letters from Truitt [President of Las Colinas Hotels Corp. and Las Colinas Sports Club, Inc] ... which made clear that LCH [Las Colinas Hotels] and/or Sports Club intended to fulfill the management agreement with Regent. Attached hereto as Exhibit "C" is one example of that correspondence.

Attached to this affidavit were several exhibits. Exhibit "A" was a letter, dated February 24, 1984, to Rafael from Truitt, extending the term of the sports club contract to 1987 and substantially increasing Regent's fee schedule for 1984, 1985, 1986, and 1987. This exhibit, a written instrument, is of itself sufficient to support a jury finding that Las Colinas had waived the condition of permanent financing in the sports club contact by electing to extend the contract in spite of the nonoccurrence of the condition. Rafael's affidavit testimony that "innumerable letters" had been received by Regent affirming Regent's management position in the Las Colinas hotel-conference project raised a fact issue as to Las Colinas' written waiver of the financing condition in the hotel contract. Furthermore, it is not necessary for the written instruments to specifically mention waiving the financing condition. A jury may find waiver if it finds that after the financing condition had failed, Las Colinas clearly expressed their intent to continue the contracts. RESTATEMENT OF CONTRACTS § 88 Comment c: "It is immaterial how the promisor manifests his intention to fulfill the prior duty without the performance of the condition thereof. Whether he speaks of waiver or uses other words in this connection is of no consequence, if the undertaking to perform is made plain."

Our analysis is supported by *Atomic Fuel Extraction Corp. v. Slick's Estate,* 386 S.W.2d 180, 183 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.). In *Atomic,* the contract between Transworld and Atomic Fuel was to terminate if a specified public accounting firm would certify that

Atomic's liabilities did not exceed $300,000. However, when the audit was done, the accounting firm did not certify the amount of indebtedness and the condition precedent to Transworld's liability on the contract failed. *Id.* at 186. Several months after the audit, Transworld, "still treating the contract … as in force," sent a telegram to Atomic Fuel *unconditionally* committing funds for the contract project. *Id.* at 187. Although Transworld did not mention Atomic's debts or specifically waive the condition precedent, the court held that the evidence of the telegram was sufficient to raise a fact issue on whether the condition had been waived. *Id.* Similarly, in the present case, the evidence that Las Colinas, in written instruments, treated the contracts as still in force and unconditionally committed to the continuation of the contracts after the financing condition had failed, raised a fact issue on the waiver of the financing conditions.

Second, Regent contends that its summary judgment proof raised fact issues as to whether Las Colinas is estopped from terminating the contracts under the financing clause. This court has defined the elements of estoppel as: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of the facts; (3) to a party without knowledge of or means of knowing the real facts; (4) with the intention that it should have been acted upon; and (5) the party to whom it was made relied or acted upon it to his prejudice. *Nichols v. Vantage Management Co.*, 638 S.W.2d 186, 188 (Tex.App.—Dallas 1982, no writ).

In opposing the estoppel defense, Las Colinas argues that all of its post-contract representations to Regent concerned future intentions, not misrepresentations of any material fact. On the other hand, the affidavit testimony of Rafael indicates that, after the failure of the financing condition, Las Colinas misrepresented to Regent that the contracts were still in force. This testimony presented evidence of a misrepresentation of a material fact, not merely a misrepresentation of future events. It is not disputed that Las Colinas made these representations with knowledge of the non-occurrence of the financing condition and of its right to terminate. Also, Rafael's affidavit testimony presented evidence that Las Colinas intended reliance on their affirmations of the contracts by accepting Regent's continued performance under the agreements after the nonoccurrence of the financing condition. Thus, the summary judgment evidence does support fact issues on the first four listed elements of estoppel. The fifth element, detrimental reliance, consists of some action by a party in reliance on a misrepresentation, resulting in prejudice to that party. *Id.* Detrimental reliance does not consist of the performance of preexisting obligations that are properly compensated. *See e.g. Stowers v. Harper*, 376 S.W.2d 34, 40 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.). Thus, Regent's actions in rendering technical assistance and in promoting the Las Colinas development project do not constitute the reliance necessary for an estoppel. All of these services were contract obligations for which Regent was fully compensated. However, Rafael's affidavit testimony that Regent turned down other lucrative managerial opportunities in the Dallas-Fort Worth area in reliance upon Las Colinas' affirmations of the contracts raised the necessary fact issue for detrimental reliance. Las Colinas argues that Rafael's affidavit testimony only showed reliance upon the agreements, not reliance upon any post-contract representations. We disagree and interpret the testimony to mean that Regent relied on the agreements being in force because of post-contract representations. We conclude that Rafael's affidavit is sufficient to raise the defense of estoppel.

Additionally, Las Colinas cites *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 734 (Tex. 1981) for the rule that estoppel is a defensive theory which does not create a contract right that does not otherwise exist. However, in *Sun Oil*, estoppel was asserted to give the lessors part of the working interest in an oil and gas lease that was not reserved at all in the lease. In the present

case, the estoppel defense is asserted to continue all of the terms and liabilities that are expressly stated in the contract. Consequently, *Sun Oil* is inapposite to the instant case. In summary, we conclude that the summary judgment evidence favoring Regent raised issues of fact on every element of Regent's defense of estoppel.

■■ Finally, Regent contends that its summary judgment evidence raised fact issues on its defense of laches. Laches, similar to estoppel, rests on the theory, that because of a delay in the exercise of a legal or equitable right, the defendant would be unconscionably prejudiced if the right were exercised. *Continental Insurance Co. v. Stewart & Stevenson Services, Inc.*, 306 S.W.2d 415, 423 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.). Two essential elements of laches are unreasonable delay by one having legal or equitable rights in asserting them and a good faith change of position by another to his detriment because of the delay. *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex.1964). In response to Las Colinas' motion for summary judgment, Regent presented evidence of Las Colinas' long delays in exercising the rights of termination and of Regent's change of position by turning down other managerial offers in the Dallas-Fort Worth area during the time Las Colinas delayed exercising its right to terminate.

■■ Conversely, Las Colinas argues that the defense of laches is not available to resist the enforcement of a purely legal right. Also, Las Colinas argues that laches is applicable only where there has been a prejudicial delay in the filing of a suit to enforce one's right, not a delay in exercising a contract right. We cannot agree because the doctrine of laches in Texas law is more broadly defined. Generally, laches is a creature of equity. It is principally a question of whether it is inequitable to permit a claim to be enforced if the delay in asserting the claim has worked an injury to the opposing party. *Bordages v. Stanolind Oil & Gas Co.*, 129 S.W.2d 786, 790 (Tex.Civ.App.—Galveston 1938, writ dism'd

judgmt cor.). As long as the parties remain in the same condition, the length of delay in asserting a right is of little consequence. However, when the opposing party's condition changes so that he cannot be restored to his former state, the delay in pressing the right becomes inequitable and operates as an estoppel against the assertion of that right. *Teledyne Isotopes Inc. v. Bravenic*, 640 S.W.2d 387, 390 (Tex.Civ. App.—Houston 1982, writ ref'd n.r.e.).

■ Although some appellate courts have viewed laches as a defense against the enforcement of equitable rights, the Texas Supreme Court and many appellate courts have included legal rights as well: *See City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex.1964) (laches is "unreasonable delay by one having *legal or equitable* rights in asserting them"); *Preston Tower*, 685 S.W.2d at 98, 103–04 (Tex. App.—Dallas 1985, no writ) (laches was used as a defense against the enforcement of a lease restriction); *Smith v. Smith*, 681 S.W.2d 793, 796 (Tex.App.—Houston [14th Dist.] 1984, no writ); *De Benavides v. Warren*, 674 S.W.2d 353, 362 (Tex.App.—San Antonio 1984, no writ).

■ In the instant case, Las Colinas's delay in exercising its termination right and in filing suit to enforce that right can support Regent's defense of laches if detrimental injury and inequity can be shown. We conclude that Regent's summary judgment evidence raised fact issues on every element of its defense of laches.

In our opinion, the application of waiver, estoppel, and laches against the exercise of a right to terminate a contract because of the failure of a financing condition, presents a novel question in Texas law. None of the cases cited by Las Colinas or Regent parallel the unusual facts in the present case. However, our decision in *Preston Tower* at 103–04 is analogous. In *Preston Tower*, a condominium association sought to terminate a lease because an age restriction in the by-laws had been violated by the lessee. In the summary judgment hearing, the lessees raised the defenses of

waiver, estoppel, and laches against the enforcement of the restriction. We held that, although the lessee had contracted to be bound by the by-laws, the summary judgment evidence did raise fact issues regarding those defenses. *Id.* at 103–04. Likewise, we hold that the summary judgment evidence favoring Regent raised fact issues on its defenses of waiver, estoppel, and laches. Accordingly, we remand the cause for a trial on the merits.

Reversed and remanded.