**Reversed and Rendered in part and Reversed and Remanded in part and Majority and Dissenting Opinions filed March 27, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00080-CV

**RR MALOAN INVESTMENTS, INC., Appellant**

**V.**

**NEW HGE, INC., Appellee**

**On Appeal from the County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 1011775**

## D I S S E N T I N G   O P I N I O N

While I agree with the majority that a postdated check is a negotiable instrument, I would affirm the judgment and the trial judge's implied finding that RR Maloan did not act in good faith either in cashing the check before its due date or in cashing the check without making any efforts to verify the check's validity.

RR Maloan seeks recovery as a holder in due course. The holder of a negotiable instrument is a holder in due course if the holder takes the instrument (1) for value, (2) in good faith, and (3) without notice of any claim or defense to the instrument. TEX. BUS. & COM. CODE ANN. § 3.302(a) (West 2002).

Good faith under the UCC is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." *Id*. § 1.201(b)(20) (West 2009). Prior to 1995, the definition of good faith for Article 3 did not include the "observance of reasonable commercial standards of fair dealing."[1] The case cited by the majority on good faith predates the 1995 amendment and was decided when good faith required only honesty in fact.

Where no findings of fact were requested or filed after a non-jury trial, we must presume that the trial court found all facts necessary in support of the judgment, and we must affirm if the judgment can be upheld on any basis supported by the record. *Point Lookout W., Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987) (per curiam); *Aduli v. Aduli*, 368 S.W.3d 805, 814 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Here, the trial court could have found that RR Maloan failed to observe reasonable commercial standards of fair dealing under the factual circumstances outlined by the majority above. RR Maloan either cashed the check before its due date or cashed it after Houston Gold Exchange stopped payment on the check.[2] *See Buckeye Check Cashing, Inc. v. Camp*, 159 Ohio App.3d 784, 789 (2005) (holding that a check-cashing business did not act in good faith because it failed to comport with reasonable commercial standards by accepting a post-dated check).

The majority states that the case can be decided under Texas law by applying the law as stated in a 1975 case applying a UCC provision that was deleted by the Texas

---

[1] Originally, Article 3 did not contain a specific definition of good faith, but it was defined in Article 1 as "honesty in fact in the conduct or transaction concerned." *See* Act of May 19, 1965, 59th Leg., R.S., ch. 721, § 1-201(19), 1965 TEX. GEN. LAWS 1, 6. In 1995, "good faith" was defined in section 3.103(a)(4) as "honesty in fact and the observance of reasonable commercial standards of fair dealing." *See* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1995 TEX. GEN. LAWS 4582, 4582. When the general definition of "good faith" in Article 1 was amended in 2003 to include "the observance of reasonable commercial standards of fair dealing," the now-redundant definition in Article 3 was deleted. *See* Act of May 22, 2003, 78th Leg., R.S., ch. 542, §§ 1, 10, 2003 TEX. GEN. LAWS 1840, 1844, 1853.

[2] The check was written on Friday. Houston Gold Exchange stopped payment on it on Saturday. The check's due date was Monday.

legislature a generation ago. *See First Nat'l Bank of Trinity, Tex. v. McKay*, 521 S.W.2d 661, 662 (Tex. App.—Houston [1st Dist.] 1975, no writ). There, our sister court stated, "Section 3.304(d) of the Code provides that knowledge that the instrument is ante-dated or post-dated does not of itself give the purchaser notice of a defense or claim." *Id.* Although this was true at the time, section 3.304(d) was deleted when Article 3 was revised in 1995.

"When the legislature amends a statute and excludes certain language of the former statute in its new version, we are to presume the language was excluded for a reason and the excluded language is no longer the law." *Loving v. City of Houston*, 282 S.W.3d 555, 560 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Because the legislature deleted the language from section 3.304 on which the *McKay* court relied, we should presume that the case no longer embodies current Texas law. *See also Pub. Util. Comm'n of Tex. v. Cities of Harlingen*, 311 S.W.3d 610, 620 n.7 (Tex. App.—Austin 2010, no pet.) ("In the absence of some showing, either by legislative history or otherwise, that the intent of the legislature in adopting the amendment was to clarify rather than change the statute in question, the presumption is of change rather than clarification." (citing *Williamson Pointe Venture v. City of Austin*, 912 S.W.2d 340, 345 (Tex. App.—Austin 1995, no writ) (per curiam))).

We may also rely on the legislative history to Revised Article 3, which has been recounted by the Texas Supreme Court in *Southwest Bank v. Information Support Concepts*, 149 S.W.3d 104, 105–06 (Tex. 2004). Without repeating the entire passage, the following illustrates that the revisions in both the model code and the Texas version of the UCC were intended to substantively change the law:

> In an effort to accommodate modern technologies and practices in payment systems and with respect to negotiable instruments, the American Law Institute ("ALI") and the National Conference of Commissioners on Uniform State Laws (the "Commissioners") drafted a revised version of UCC Article 3 ("Revised Article 3"), with corresponding amendments to Articles 1 and 4. . . . The American Bar Association approved the Official

Text in 1991.

The Business Law Section of the State Bar of Texas formed a Commercial Code Committee in 1988 for the purpose of studying and making recommendations with respect to new and revised Articles to the UCC. . . . The committee recommendation included a complete deletion of existing Chapter 3 and adoption of a new revised Chapter 3; revisions of selected sections in Chapter 4; and conforming amendments to Chapters 1 and 9 of the Business and Commerce Code. . . . Representative Grusendorf introduced as House Bill 1728 the committee's recommended revisions . . . . The bill, with some amendments, was passed by the House and Senate, signed by the Governor, and became effective January 1, 1996. Act of May 29 [sic], 1995, 74th Leg., R.S., ch. 921, § 1, 1995 TEX. GEN. LAWS 4582.

By rendering judgment in favor of RR Maloan, the majority holds that a check-cashing company can cash a check before its due date without any inquiries to determine the instrument's validity. Because RR Maloan sees and hears no evil, it acts in good faith. I believe this is inconsistent with the current definition of good faith as we must construe it under the existing version of the UCC. With the change in the good-faith definition, no longer may the holder of an instrument act with "a pure heart and an empty head and still obtain holder in due course status."[3]

I respectfully dissent.


/s/    Tracy Christopher
       Justice



Panel consists of Justices Boyce, Christopher, and Brown. (Boyce, J., majority).

---

[3] *Any Kind Checks Cashed, Inc. v Talcott*, 830 So.2d 160, 165 (Fla. Dist. Ct. App. 2002) (holding that a check-cashing company did not act in good faith under the circumstances even when it tried but failed to contact the maker of the check, and quoting *Maine Family Fed. Credit Union v. Sun Life Assurance Co. of Can.*, 727 A.2d 335, 342 (Me. 1999)).